Good v. Higgins.

---

No. 20,451.

ROBERT GOOD, *Appellee*, v. J. W. HIGGINS, *Appellant*.

SYLLABUS BY THE COURT.

1. SLANDER—*Express and Implied Malice—Instructions.* Instructions to a jury concerning express and implied malice examined and held sufficiently accurate and plain for the purpose of the cause under consideration.

2. SAME—*Cause of Action Stated in Several Counts—No Finding of Amount under Each Separate Count Required.* In an action for damages·for slander, in which eight separate counts were pleaded setting forth different slanderous statements uttered by the defendant, it is held not to be reversible error for the trial court to refuse to submit a special question which asked how much damages the jury allowed for each separate slander; and a general verdict for a reasonable sum is sufficient.

3. SAME—*Want of Good Faith—Verdict Not Excessive.* Where two persons are candidates for a public office, and one publicly proclaims the other to be a "thief," an "embezzler," "dishonest," "crooked," and the like, and the jury specially find that such statements were not made in good faith, a verdict awarding damages in the sum of $1500 to the slandered person can not be disturbed as excessive.

4. SAME—*Slanderous' Words—Justification—Candidate for Office.* Before such statements concerning a candidate for office can be justified

or excused as privileged, it must be shown that they were uttered in good faith, in the sincere belief of their truth, and with good reason to believe that they were true, and that they were uttered in an honest endeavor to lay the facts before the electors as to the real fitness of the candidate who sought their suffrages. (*Coleman v. MacLennan*, 78 Kan. 711, 98 Pac. 281.)

Appeal from Mitchell district court; RICHARD M. PICKLER, judge. Opinion filed December 9, 1916. Affirmed.

*C. M. Higley, Clark A. Smith*, both of Cawker City, and *N. C. Else*, of Osborne, for the appellant.

*Frank A. Lutz, A. E. Jordan*, both of Beloit, and *J. W. Tucker*, of Cawker City for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action for damages on account of certain slanderous statements made by defendant against plaintiff while the latter was a candidate at an informal election held in Cawker City to determine the popular choice for postmaster, pursuant to an arrangement between Congressman John R. Connelly and the candidates seeking his favor and recommendation for that appointment.

The petition, in eight counts, alleged in substance that prior to that election and while the campaign was progressing, in the presence of various electors, the defendant had willfully and maliciously uttered and published false, scandalous and defamatory slanders concerning the plaintiff, as follows:

"Robert Good is dishonest." "If Robert Good is as crooked in the post office as he was in the chautauqua business he won't last six months." "Robert Good simply stole the chautauqua blind and has been stealing right along, and I can prove it." "Robert Good is an embezzler and I can prove it." "If Good gets the postoffice and he is as dishonest in handling that business as he was the chautauqua business he will not last long." "Good is a thief and an embezzler and he ought to be behind the bars." "Why he (Good) has that home up there that he got with money that he stole from the chautauqua association." "Good is a thief and an embezzler and ought to be in the penitentiary."

The defendant's answer pleaded certain business transactions touching the purchase of a newspaper; the giving of certain notes by defendant and others to borrow money to buy the newspaper; that the paper was bought in the name of certain trustees and that plaintiff was to have it when he had

fully paid the purchase price; that plaintiff had agreed to sell a newspaper owned by him in Jamestown and apply the proceeds on the notes; that he failed to do so, but bought a homestead residence instead; that he had falsely represented that he was the owner of the newspaper; that in disregard of his agreement with defendant and others he had made another contract with the former owner of the newspaper for its purchase, fraudulently attempting to supersede the trustees and signers of the notes; that plaintiff, as secretary and manager of the Lincoln Park Chautauqua Association, had induced defendant and others to guarantee the chautauqua expenses and had misrepresented its financial condition, and that it had become insolvent under plaintiff's management; and that in 1912 plaintiff conducted another chautauqua and had induced defendant and others to guarantee the payment of certain of its expenses, and that he had violated his promise to satisfy these in order and that he had diverted the funds to other purposes and that the defendant and the other guarantors were being called on by creditors to pay upon their guarantee, and that plaintiff had never rendered a complete account of the chautauqua affairs.

Defendant also pleaded the plaintiff's candidacy for the office of postmaster, and that such statements as he had made concerning plaintiff (not admitting their form or substance as set forth in the petition) were made with full knowledge of the facts, without malice and in good faith, canvassing the worth of character and qualifications of plaintiff for the office of postmaster, and that all he had said concerning plaintiff was true, and justified and privileged, and that—

"Believing and having good reason to believe that the plaintiff was an unfit and improper person to hold the office to which he aspired, he did, without malice, oppose the election of plaintiff as he felt in duty bound to do and did try to dissuade electors from voting for plaintiff and to vote for the successful candidate."

Plaintiff filed an extended reply, making appropriate traverses, and explaining and justifying his conduct in the newspaper deal; the purchase of his residence; his claim of ownership of the newspaper; his record as secretary and manager of the chautauqua and its financial affairs.

The cause was tried to a jury and a general verdict for plaintiff was rendered, awarding him $1500 as damages. Certain

special questions were submitted in which the jury were asked to state whether defendant had called the plaintiff "a thief," "embezzler," "crooked," "dishonest," and the like. All of these were answered "yes."

Other questions were submitted:

"Question 5. If any statements were made by defendant, were they made during the campaign for postmaster? Answer. Yes.

"Question 6. If any such statements were ever made, were they made or uttered in good faith for the purpose of inducing voters to vote for a particular candidate? Answer. No."

From the judgment on the verdict defendant appeals, assigning error in the instructions, in the court's refusal to submit a special question asked by defendant, and in the excessive verdict.

The court instructed the jury concerning express and implied malice as follows:

"5. Slander is the malicious defamation of a person with respect to his or her character, trade, profession or occupation, by words or signs.

"6. Malice means a wrongful act done intentionally without just cause or excuse.

"7. The words must be uttered maliciously before a recovery can be had of the speaker.

"8. While ordinarily the words must have been uttered maliciously and it must so appear before a recovery can be had of the speaker, yet you are instructed that the words falsely imputing to a party the commission of a crime are actionable *per se.*, that is, actionable in themselves, and the law presumes that the party uttering them intended maliciously to injure the person concerning whom they were spoken unless the contrary appears from the evidence, occasion or manner of speaking them. Such malice so presumed is known as implied malice as distinguished from express malice.

"17. In an action for a slander punitive or exemplary damages can be allowed only when defendant is found to have been actuated by express malice. Express malice is defined in paragraph 6 of these instructions.

"18. . . . but as to whether . . . you award any sum as punitive damages rests in your sound discretion, and you would not be compelled to award any sum as punitive damages even though you should find that the defendant did maliciously speak the words as alleged in the petition."

It is contended that no distinction is here made between implied malice and express malice, and that this distinction was important because no evidence of actual damages was shown. We think the court's instructions on this point were plain and sufficient. Moreover, the record discloses positive evidence

touching plaintiff's actual damages.  The plaintiff testified
that many of the persons in whose hearing the defendant had
uttered the slanderous statements concerning plaintiff had re-
ported the defendant's language to him:

"Q.  State whether or not these discussions in your place of business
were ever had with reference to the effect it had on the publishing of
your paper?

(Counsel for defendant) : "Object to the question for the reason it is
incompetent, irrelevant and immaterial and calls for a conclusion.

"The Court:   Objection sustained.

"Q.  You may state your feelings when these statements were made
to you?

"A.  I felt very much hurt and humiliated.

"A.  My feelings as I stated were particularly a hurt feeling and one
of deep humiliation, which made it almost impossible for quite a period
of time, for me to meet those with whom I had been associated.

"A.  For quite a period of time it affected me very seriously in a
mental way and affected my ability to transact business to such an ex-
tent that at some times I even left the office and would go away by my-
self in order to recover my usual state of mind and get control of my
nerves."

Damages of the sort testified to by plaintiff are about the
only kind of damages that the victim of a slander would ordi-
narily sustain or would be able to prove; and unless the courts
will redress the grievances of a slandered person on this kind
of proof it might as well be judicially declared that slander
is not an actionable wrong.  The jury found that the slander-
ous words were not uttered in good faith, and this, together
with the general verdict, seems sufficient to cover the essential
of express malice.

Complaint is made of the court's refusal to submit to the
jury this question:

"If you find for the plaintiff, state how much, if any, you allow upon
each separate cause of action."

Here was no error.  While rules of good pleading encourage
the separate statement of technically different causes of action,
for the convenience of the court, jury and litigants, so that
plaintiff's several allegations may be more readily traversed,
admitted, denied, proved and disproved seriatim, yet in an

action for slander it would serve no good purpose to catechise the jury on how much they assessed the defendant for calling the plaintiff a thief, how much for calling him an embezzler, how much for calling him dishonest, etc. (See *Thompson v. Harris,* 64 Kan. 124, 67 Pac. 456.) If the defendant be held to the same technical strictness which he invokes, his special question really involved eight questions in one, since there were eight causes of action pleaded. (*Railroad Co. v. Aderhold,* 58 Kan. 293, 49 Pac. 83.) But it may be conceded without disturbing the result that the jury never did go through the eight specific and separate causes and allow so much on the first, so much on the second, so much on each, and add up the separate items to a total of $1500 as found by their verdict. Like sensible men they considered all the facts, and in the exercise of their best judgment awarded the plaintiff a sum within the total amount prayed for sufficient in their opinion to compensate him for his grievances. No court would permit a jury to be catechized in a personal-injury case on how much they allowed for each sprain, each bruise, each fracture, and the like, and no logical difference is discoverable here to justify a different practice.

Under the error assigned on the excessive verdict, the defendant contends that the statements were privileged because the plaintiff was a candidate for office. To be privileged under that rule (*Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281) it should be made to appear that defendant uttered the statements in good faith, believing with good reason that they were true, and that he did so in a sincere effort to advise the electors what manner of man the plaintiff was who sought their suffrages. But the jury have foreclosed the possibility that the statements which he uttered concerning his opponent were made in good faith in a sincere effort to apprize the electors of defendant's fitness for postmaster. Few men would consider an award of $1500 an adequate compensation for being subjected to such slanders as were uttered against this plaintiff in and about the community in which he resided. Certainly the verdict is not excessive, and since no substantial error is discernible, the judgment is affirmed.