### In Re GORSUCH

(75 N.W.2d 644)

(File No. 9569.   Opinion filed March 19, 1956)

**Phil Saunders,** Atty. Gen., **George Wuest,** Asst. Atty. Gen., for Plaintiff.

**Roger Campbell,** Aberdeen, for Defendant.

BURNS, Circuit Judge. This is an original proceeding brought in this Court on a complaint by the Attorney General of the State of South Dakota, based on a report of the Grievance Committee of the State Bar of the State of South Dakota, requiring Charles E. Gorsuch, a licensed attorney of this State located at Aberdeen, South Dakota, to show cause why his license as an attorney and counsellor at law should not be cancelled and revoked.

The complaint alleges violation of the Rules of Professional Conduct of the State Bar of South Dakota arising out of a campaign conducted by said Charles E. Gorsuch for Circuit Judge of the Fifth Judicial Circuit during the general Election Campaign of 1954. It is alleged that various publications described and set out in the complaint caused to be made by Gorsuch were false, "scurrilous, irresponsible, unethical, unjust, not in accord with fair play, displayed bad faith, and a spirit of vindictiveness unworthy an attorney."

The answer filed on behalf of Charles E Gorsuch, hereinafter referred to as defendant, in substance denies any conduct which would be grounds for disbarment and suspension under SDC 32.1209. He alleges that the publications were privileged in that they were made in good faith and without malice to present what he believed to be pertinent facts with reasonable deductions therefrom to promote his candidacy for the elective office of Circuit Judge and to bring about the defeat of his principal opponent who resided in the same County. He admits that he singled out Mr. Philo Hall as his chief opponent because of SDC 32.0402, which provides that two judges shall be elected in the Fifth Judicial Cirucit, but shall not be electors of the same County.

The answer contains these admissions: "This defendant admits that the campaign conducted by him was undignified; that the proper judicial temperament of a candidate for Circuit Judge was not manifest in the printings, writings and cartoons used by this defendant; that in retrospect this defendant has come to the realization that the cartoons and caricatures used by him were undignified and did not ascribe proper respect to the office he was seeking, and has honestly concluded that the use of such devices or practices

will never again be indulged by this defendant in seeking the suffrage of the voters of the Fifth Judicial Circuit." Also, in a personal appearance before the Court and by a written statement thereafter filed, Mr. Gorsuch stated to the Court: "It is with the deepest humility and utmost respect that I can advise this Court of the realization which is mine that in retrospect the campaign which I conducted in 1954 for Circuit Judge did not measure up to the statute (sic) and dignity of the office to which I aspired.

"In this realization and with the firm resolve on my part that never again will occasion be found to conduct a disciplinary action of this kind, predicated upon a lack of respect for the institution of the Court, I respectfully petition that I be permitted to continue in the practice of the profession which has provided a living for me and for my family for more than a quarter of a century."

The facts are established by stipulation filed by the attorneys for the parties. Defendant was admitted to practice as an attorney in this state on or about June 11, 1928, and for more than 20 years has been a practicing attorney in Aberdeen, South Dakota, in the Fifth Judicial Circuit. Early in April, 1954, defendant announced his candidacy for the office of Circuit Judge at the primary election of the year 1954. Soon thereafter one of the incumbent Circuit Judges in the Fifth Circuit, who had been in ill health, made a statement to a newspaper of wide circulation in the Fifth Circuit to the effect that his petitions for renomination had been circulated and were ready for filing, but that "if any candidate having the support of a substantial share of the bar is qualified this month by filing an adequate number of petitions I will not be a candidate * * *" Other candidates, including Mr. Philo Hall residing in Brown County, announced for the office of Circuit Judge. The incumbent Judge withdrew. Shortly thereafter a member of one of the larger law firms in Aberdeen called upon defendant to persuade him to withdraw as a candidate for Judge. Later the members of this firm and several other lawyers constituting a majority of the bar of Brown County by public advertisement endorsed the candidacy of defendant's Brown County opponent and an incumbent Judge who was a candidate for

re-election, and made substantial financial contributions to an attorneys' committee organized to promote and secure their election. Some of them wrote letters to clients. and made telephone calls on behalf of defendant's opponent. As would be expected in any such group of established lawyers, some of them had been retained by or had rendered legal services at times for insurance companies, liquor companies, public utilities, railroad corporations and other corporations. Defendant's opponent in Brown County was a law partner of the general attorney for a railroad corporation until he withdrew from the firm prior to the general election. As a member of the firm this opponent had represented the railroad corporation and had been a paid lobbyist for this railroad at two sessions of the South Dakota State Legislature.

In the course of his campaign for election as Circuit Judge, the defendant gave publicity to these facts by billboards, cartoons, so-called comic strip, and newspaper advertisements and statements. But defendant did not stop with a statement of the facts. In one "comic strip" the general attorney for the railroad was represented as engaged in "power politics" and exerting pressure on local attorneys for the company to work for a "former RR atty. and Lobbyist" and to contribute to his campaign fund. Two other cartoons showed railroad attorneys, insurance company attorneys, public utilities attorneys and liquor attorneys engaged in "power politics" and organized and working for the election of the candidate labeled "our man." With each of these cartoons were published the accompanying statements: "One Great Issue. My local Aberdeen opponent (Milwaukee Railroad attorney and Lobbyist) has accepted hundreds of dollars in campaign funds and services from a few Aberdeen Corporation lawyers. If elected ? ? ? Whose Judge would he be ? ? ? No other Circuit Judge candidate has been guilty of this practice. Why are they backing my local Aberdeen opponent?"

Like statements were repeatedly made in different forms and with emphasis by large black type and underscoring in several newspaper display advertisements over the printed name of defendant. Thus not only by rhetorical question, by innuendo and by insinuation, but by direct statements.

and cartoons the defendant represented to the electorate that it was improper for lawyers to contribute to the campaign fund of his opponent in Brown County, that it was improper for such opponent to accept their support and contributions as made, that such lawyers had improper motives to influence the candidate in favor of their clients should he be elected judge, and that the candidate if elected would be improperly influenced and biased in favor of their corporation clients.

We find nothing in the facts to sustain the charges of improper conduct and motives made by the defendant against his Brown County opponent and those lawyers who gave him their personal support and made financial contributions to a lawyers' committee organized to promote his candidacy. Of course, a candidate for judicial office who accepts assistance of lawyers, and lawyers who render personal and financial help to promote the candidacy of a lawyer for judicial office, must avoid any appearance of impropriety. The judicial candidate must give no reasonable ground for the suspicion that he will be improperly influenced as a judge, and lawyers supporting another lawyer or a judge for election to a judicial office must give no reasonable ground for the suspicion that they will be the recipients of favors from the candidate if elected. We agree with an opinion of the Committee on Ethics of the American Bar Association that "It is not improper for lawyers to contribute financially to the campaign of a candidate for judicial office, when in their opinion the candidate merits such support and the expense of the campaign, when reasonably conducted, exceeds that which the candidate should reasonably bear himself." We add that the support should be given and accepted under such circumstances that not only the evil of influence and favoritism in the work of the Courts is avoided but the very appearance of evil or suspicion of improper motives is carefully guarded against. The motive should be the selection of the best qualified candidate for judicial office and should not be a personal or selfish one.

One of the three members of the Grievance Committee of the State Bar of South Dakota dissented from the conclusions and recommendations of the Committee because

of his opinion that the advertising campaign conducted by the defendant was privileged under the principles stated in the case of Egan v. Dotson, 36 S.D. 459, 155 N.W. 783, 787. In that action for damages for defamation of character the Court said:

> " 'What may be properly called the liberal view, and one which has the sanction of considerable authority, is that a charge made against a candidate for office is privileged if the person making it believes in the truth of the charge and has probable ground for his belief, for which purpose hearsay suffices, regardless of the fact that the charge is a false statement of fact.'

> "In other words, if a publication is not malicious, it is privileged under this rule, whether true or false. * * * In the year 1900 this court determined that the so-called liberal view conformed to a proper interpretation of our Constitution * * * and * * * Civil Code. This view has been consistently adhered to ever since, and is the settled law of this state."

A lawyer as well as any other citizen is entitled to the benefit of such rule of privilege in a libel action, but a lawyer under his oath, the rules of professional conduct and SDC 32.12 relating to the duties of attorneys at law "should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice." Even in the exercise of a privilege a lawyer should so conduct himself that the work of the Courts and the administration of justice will not suffer by reason of his continuing to hold a license to practice law. This does not mean that the Court has the function or right to regulate the morals, habits or private lives of lawyers, who like other citizens are free to act and to be responsible for their acts, but when the morals, habits or conduct of a lawyer demonstrate unfitness to practice law or adversely affect the proper administration of justice, then the Court may have the duty to suspend or revoke the privilege to practice law in order to protect the public.

Counsel for defendant in his brief earnestly askes these questions: "Does a citizen, because he is a lawyer, forfeit his right to criticise another lawyer who is a candidate

for judge? Has he thus lost his right of Freedom of Speech? Has he thus forfeited his liberty protected by the due process clause of the Constitution of the United States? Must a lawyer refrain from the criticism of another lawyer who is a candidate for any legal or judicial office under the threat and danger of having disbarment proceedings filed against him?" We answer these questions in the negative.

■■■ Courts will not exercise the power to grant or deprive a person of the privilege to practice law in such manner as to abridge the freedom of speech guaranteed by the Constitutions of the United States and this State. There is a right to criticise a lawyer or an incumbent judge who is a candidate for judicial office. There is a right to criticise a judge for his past actions in office and there is a right to comment on completed judicial proceedings. But for the right to speak freely, there is responsibility for abuse of the right. A person may have to respond in damages for libelous speech. A publication obstructive of a pending judicial proceedings may subject a person to punishment for contempt of Court. And in the case of a lawyer an abuse of the right of free speech may be some index of his character or fitness to be a lawyer.

■■■■ A lawyer may engage in political activity and speak as freely as any other citizen. But in a contest between lawyers for a judicial office, a lawyer under his oath and the duties imposed upon him by law has an added responsibility and should seek to maintain a higher standard of conduct than can be expected of one who is not a member of a privileged and a responsible profession. How a lawyer may use or abuse freedom of speech even in a political campaign may have some relation to his professional qualifications.

This proceeding is not a contempt proceeding in which it is claimed that a publication as to a Court or judge directly tends to impede, embarrass or obstruct the Courts in the administration of justice. The purpose of the proceeding is not to subject a party to punishment for contempt. It is a proceeding for the suspension or disbarment of the party defendant in which the burden is upon the complain-

ant to establish that there has been misconduct on the part of the defendant which proves him unfit to be intrusted with the duties and responsibilities belonging to the office of an attorney. As to such proceedings this Court said in State v. Kirby, 36 S.D. 188, 154 N. W. 284, 289:

> " 'They are not instituted or intended for the purpose of punishment. Their object is to preserve the purity of the courts and the proper and honest administration of the law. Attorneys are officers of the court, made so by its order when they are admitted to practice therein. The purpose of the proceedings for suspension and disbarment is to protect the court and the public from attorneys who, disregarding their oath of office, pervert and abuse those privileges which they have obtained by the high office they have secured from the court. The right to practice law is not an absolute right, but a privilege only. It is but a license which the court grants by its judgment of admission to the bar, and which the same court may revoke whenever misconduct renders the attorney holding such license unfit to be entrusted with the powers and duties of his office.' "

The question is whether defendant's conduct demonstrates an unfitness to practice law after having exercised that privilege for more than 20 years. We take into account that defendant felt provocation for the publications he made during the course of his campaign for judicial office. He resented the imputation of unfitness for the office by those opposed to his candidacy. He misconstrued the Canons of Ethics to lead to the erroneous conclusion that a large segment of the bar of his home county had improper motives in supporting his opponent.

The publications were made in the heat of an election campaign. The electors of the Fifth Judicial Circuit like the American people as a whole are politically mature and have had much experience in weighing statements made in an election campaign. The name calling, the unfair charges, the innuendoes and the destructive criticisms so characteristic of an election contest are not taken too seriously by the voters. It is well understood by the electors that the campaign statement is biased and the political cartoon is cari-

cature. The exaggerations of an election campaign in the calmer reasoning which follows the election often appear ridiculous.

This is not to say that we approve the campaign carried on by the defendant; we disapprove it. We do not find that the publications so related to the Courts as to directly tend to impede, embarrass or obstruct the Courts in the administration of justice. At the very least we do agree with defendant's admission that his conduct of the campaign was undignified and did not measure up to his statutory duties and the dignity of the office to which he aspired. We accept at face value defendant's apology and statement "that never again will occasion be found to conduct a disciplinary action of this kind, predicated upon a lack of respect for the institution of the Court."

The Court commends the Committee of the State Bar and the other officers of the Court who have brought this proceeding to the attention of the Court and so diligently presented the matter to the Court.

In view of the fact that this proceeding is one of first impression in this state and that the defendant in retrospect has recognized that his conduct did not measure up to the standards required of a licensed attorney as herein stated, the Court concludes that no further disciplinary action by way of suspension of defendant's privilege to practice his profession is required in the public interest.

The Court reprimands the defendant for the conduct disclosed in this proceeding and it is ordered that he pay costs in this Court.

BURNS, Circuit Judge, sitting for SMITH, J., disqualified.

All the Judges concur.