STATE OF KANSAS, *Petitioner,* v. J. R. RUSSELL, *Respondent.*

No. 51,424

STATE OF KANSAS, *Petitioner,* v. J. R. RUSSELL, *Respondent.*

(610 P.2d 1122)

Opinion filed May 10, 1980.

*Roger N. Walter,* disciplinary counsel, argued the cause and was on the briefs for the petitioner.

*John Anderson, Jr.,* of Anderson, Granger, Nagels & Lastelic, Chartered, of Overland Park, argued the cause and was on the briefs for the respondent.

The opinion of the court was delivered by

FROMME, J.: Two separate complaints were filed against J. R. Russell, a licensed attorney, one on April 10 and the other on April 18, 1979. The complaints were heard separately by the same panel of the Kansas Board for Discipline of Attorneys. The panel filed a report in both cases with findings and recommendations on August 31 and September 5, 1979, respectively. The respondent filed answers to the panel reports promptly, but delay in setting the cases for argument occurred when the respondent made an attempt to have the United States District Court for the District of Kansas permanently enjoin this court and the Kansas Board for Discipline of Attorneys from hearing the disciplinary proceedings. The respondent's request for injunction was denied by the federal court. Briefs were then filed by both respondent and disciplinary counsel, and we have proceeded to hear and decide the matters.

The first complaint which will be discussed and evaluated concerns a political advertisement placed in *The Kansan,* a newspaper of Kansas City, Kansas, in an unsuccessful attempt by J. R. Russell, respondent, to unseat Paul Haas as a member of the Board of Public Utilities. This will be referred to as the Haas complaint.

The second complaint, which will be discussed and evaluated later, concerns the handling of a tort claim by J. R. Russell which claim arose from an automobile collision occurring when a minor daughter of Paul R. Soptick was driving her father's car. This will be referred to as the Soptick complaint.

I

We will consider the Haas complaint first.

J. R. Russell, a lawyer, ran for public office seeking a position on the Board of Public Utilities (B.P.U.) of Kansas City, Kansas, in the April, 1979, election. The only qualification for the office is being a "qualified voter of the district." During the campaign J. R. Russell placed a political advertisement in *The Kansan* on January 21, 1979, which advertisement we will examine in some detail later. It will suffice to say the article was uncomplimentary of both Paul Haas and Nick Tomasic, the district attorney of Wyandotte County.

A similar article had been published by J. R. Russell in a 1976 campaign for the office of district attorney when Russell ran against Nick Tomasic for that position. At that time a complaint

was also lodged with the Kansas Board for Discipline of Attorneys (Board) by Nick Tomasic. The complaint was later dismissed for lack of sufficient evidence to prove misconduct. The incident is cited by respondent to indicate bad faith in filing the present complaint because of the similarities in the article published and the previous dismissal. Respondent suggests the present complaint should have been dismissed by the Board.

The panel, after hearing the evidence, found that the respondent prepared the article for publication, placed the same in the newspaper, and knew some of the statements in the article were false, deceptive and misleading. The panel concluded that J. R. Russell had violated the following disciplinary rule:

"DR 1-102  Misconduct.
(A)  A lawyer shall not:

. . . .

"(4)  Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . .

"(6)  Engage in any other conduct that adversely reflects on his fitness to practice law." Code of Professional Responsibility, Rule No. 225, 225 Kan. xciii.

The panel recommended that J. R. Russell be disciplined and be publicly censured by this court. The respondent Russell took exception and filed an answer raising certain issues in this court concerning an attorney's right to freedom of speech under the *First Amendment of the United States Constitution* and Section 11, Bill of Rights, Constitution of the State of Kansas.

Section 11 of the Kansas Bill of Rights states:

"The liberty of the press shall be inviolate; and all persons may freely speak, write or publish their sentiments on all subjects, *being responsible for the abuse of such rights;* and in all civil or criminal actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted." Emphasis supplied.

The First Amendment to the United States Constitution merely states that Congress shall make no law abridging the freedom of speech, or of the press, but Section 11 of the Kansas Bill of Rights further explains that all persons may freely speak, write or publish their sentiments on all subjects, "being responsible for the abuse of such rights." This last phrase recognizes that freedom of speech and press is not without certain limitations. The two constitutional provisions are generally considered coextensive.

*State v. Motion Picture Entitled "The Bet",* 219 Kan. 64, 72, 547 P.2d 760 (1976).

Freedom of speech and of the press, which are secured against abridgment by these Constitutions, are among the most fundamental personal rights and liberties of the people. *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964). These constitutional provisions do not confer an absolute right to speak or publish without responsibility for whatever one may choose to communicate. *Branzburg v. Hayes,* 408 U.S. 665, 683, 33 L.Ed.2d 626, 92 S.Ct. 2646 (1972). These provisions in our Constitutions have never prohibited punishment of those who abuse the freedoms guaranteed thereunder. *Stromberg v. California,* 283 U.S. 359, 369, 75 L.Ed. 1117, 51 S.Ct. 532 (1931). A person's constitutional right to freedom of speech guaranteed by the Constitutions of the United States and of the State of Kansas is no less by reason of having received a license and privilege to practice law. *In re Gorsuch,* 76 S.D. 191, 75 N.W.2d 644 (1956), 57 A.L.R.2d 1355 (1958). The principle that the right of freedom of speech is not absolute was expressed most clearly by Justice Oliver Wendell Holmes when he said that no person has a right to cry "fire" in a crowded theatre.

In delineating the boundary between acceptable regulation and impermissible restraint on freedom of expression, the manner and time of regulation will affect the severity of the court's scrutiny. Restraint of speech and written publication prior to exercise of these rights presents a separate issue from regulation and discipline after the fact. *Organization For A Better Austin v. Keefe,* 402 U.S. 415, 29 L.Ed.2d 1, 91 S.Ct. 1575 (1971); *State v. Motion Picture Entitled "The Bet",* 219 Kan. 64. The cases which concern questions dealing with prior restraint of speech and press are not applicable to our present case. The imposition of the ethical obligation of honesty upon lawyers under DR 1-102(A)(4) and subsequent discipline for violation of the rule is permissible and may be necessary in the interests of the administration of justice. It is only in those instances where unbridled speech amounts to misconduct which threatens a significant state interest, that a state may restrict a lawyer's exercise of personal rights guaranteed by the Constitutions. *Spevack v. Klein,* 385 U.S. 511, 17 L.Ed.2d 574, 87 S.Ct. 625 (1967); *N.A.A.C.P. v. Button,* 371 U.S. 415, 9 L.Ed.2d 405, 83 S.Ct. 328 (1963); *Schware v. Board of Bar*

*Examiners,* 353 U.S. 232, 1 L.Ed.2d 796, 77 S.Ct. 752, 64 A.L.R.2d 288 (1957); *Konigsberg v. State Bar,* 353 U.S. 252, 1 L.Ed.2d 810, 77 S.Ct. 772 (1957); *In re Sawyer,* 360 U.S. 622, 3 L.Ed.2d 1473, 79 S.Ct. 1376 (1959).

When conflict occurs between the regulatory powers of government, as for example the subsequent imposition of discipline for misconduct by a state-licensed attorney, and the individual liberty to speak and publish, a reconciliation must be effected requiring a careful weighing and balancing of the respective interests. Such measures of regulation are not prohibited where justified by a valid governmental interest within the administration of justice, and when the measures are not intended to control the content of speech but only incidentally limit its unfettered exercise.

As to the nature of governmental interest within the administration of justice which justifies such control, it was stated in *Polk v. State Bar of Texas,* 374 F. Supp. 784 (N.D. Tex. 1974):

"Generally there are two areas where a state has a significant interest in prescribing standards of attorney conduct. An attorney may be disciplined for conduct which shows his inability to represent clients competently and honestly. An attorney may also be disciplined for conduct which interferes with the processes of the administration of justice . . . ." pp. 787-788.

Respondent notes that little authority can be found on the issue of professional discipline for political rhetoric directly implicating dishonesty under DR 1-102(A)(4). However, extensive treatment is afforded the issues of discipline of attorneys for publications made in the course of political campaigns for the election of judges. See annotations in 57 A.L.R.2d 1362 and 12 A.L.R.3d 1408. An attorney may be disciplined for criticism in the heat of a political contest if such criticism is carried beyond the limits of truth and fairness. *In re Charles A. Thatcher,* 80 Ohio St. 492, 89 N.E. 39 (1909). Within that context the expression of opinion is protected if true or in good faith believed to be true, but when derogatory factual allegations are false and with ordinary care should have been known to be false, discipline may be imposed. *State Board of Exam. v. Spriggs,* 61 Wyo. 70, 155 P.2d 285 (1945).

In *State v. Nelson,* 210 Kan. 637, 640, 504 P.2d 211 (1972), this court stated:

"Concerning respondent's argument that DR 1-102 (A) (5) creates an impermissible and chilling effect on 'First Amendment freedoms,' an examination of

decisions on the point (12 A.L.R.3d, Anno., p. 1408) reveals the consensus to be that an attorney's right to free speech is tempered by his obligation to both the courts and the bar . . . ."

In the case of *In re Baker,* 218 Kan. 209, 542 P.2d 701 (1975), a disciplinary proceeding arising out of a political campaign against an incumbent judge, this court held that a challenger in a partisan election for judicial office is free to criticize an incumbent's record so long as the criticism is accurate. However, a violation of ethics was found and the challenger was censured for publishing untrue statements concerning eligibility for a disability pension, which statements the challenger knew or could have known were false by reading an applicable state statute.

Although a lawyer may speak out and state his opinions on current campaign issues without fear of jeopardizing his license to practice law, his First Amendment rights are not absolute. The guarantee of freedom of speech will not protect him from disciplinary action as a lawyer if he is guilty of known falsehood intentionally used and published for the purpose of misleading the voters and gaining personal advantage for himself or his candidate.

It is suggested that because the respondent was not acting in the capacity of an attorney and was not seeking an office requiring the person to have a license to practice law, the Code of Professional Responsibility applicable to lawyers should not apply. We do not agree.

It is recognized generally that lawyers are subject to discipline for improper conduct in connection with business activities, individual or personal activities, and activities as a judicial, governmental or public official. *In re Kirtz,* 494 S.W.2d 324 (Mo. 1973); *In re Wilson,* 391 S.W.2d 914 (Mo. 1965); *Chernoff's Case,* 344 Pa. 527, 26 A.2d 335 (1942). A lawyer is bound by the Code of Professional Responsibility adopted by rule of this court in every capacity in which the lawyer acts, whether acting as a lawyer or not. Formal Opinion 336, Committee on Ethics and Professional Responsibility of the American Bar Association, June 3, 1974.

Now let us turn to the facts contained in the article published by respondent in *The Kansan.* The political advertisement appears to be three columns wide and a full page in length. The respondent listed five factual statements in the article charging misconduct, illegal acts and violation of law by the incumbent

member of the B.P.U., and by the district attorney of Wyandotte County. Several of these statements contained partial truths which were used to cast aspersions by innuendo on the incumbent member of the B.P.U. and the district attorney.

Although many of the statements do not appear in good taste, they are largely political rhetoric and cannot be the basis for discipline when viewed under the light of the First Amendment. However, there were false statements made which respondent knew or should have known to be false which involved dishonesty and misrepresentation violating DR 1-102 (A) (4). Russell made the statement: "Some 'unknown' water & light employees helped their friends embezzle over $600,000.00 from the city water & light dept. over a 3 year period. All parties involved went free and unprosecuted."

The panel found: "(c) There is no evidence to support Russell's statement following Fact No. 2 that '$600,000.00 was embezzeled from the City Water and Light Department.' " There was an audit of the books of the department for that period. The audit report was on file and available to respondent. It reports bookkeeping errors during the period of $335,000.00 and an additional unexplained discrepancy in the books of $200,000.00. The audit disclosed no acts of embezzlement.

The article further stated:

"FACT NO. 5: PAUL HAAS, UTILITY BOARD PRESIDENT, SIGNED AN ILLEGAL $35,000 CONTRACT IN 1975 WITH THE PROTECTION SPRINKLER COMPANY. The execution of the contract was in violation of K.S.A. 75-4317. THERE ARE NO MINUTES OF THIS CONTRACT IN THE UTILITY BOARD'S WEEKLY MEETING MINUTES BOOK. AGAIN, IN VIOLATION OF K.S.A. 75-4317 (Kansas Sunshine Laws).

"RUSSELL'S STATEMENT: THE DIST. ATTY. HAS KNOWLEDGE OF THESE ILLEGAL ACTS SINCE 1975. FOR THE PAST 3 YEARS HE HAS REFUSED TO ACT. INSTEAD HE ACTS AS IF HE WERE THE 'GUARDIAN ANGEL' FOR THE UTILITY BOARD INSTEAD OF ATTORNEY FOR THE PEOPLE OF WYANDOTTE COUNTY."

The panel found:

"(f) In Fact No. 5 of Respondent's Exhibit 1 and in Russell's statement following it, Russell states information that is not substantiated by evidence and is totally untrue. He cites Kansas statutes which are irrelevant and not applicable to the facts stated and then alleges that the law was violated when it was not."

The basis for the panel's findings was testimony that investigation of allegations of such an illegal contract had been made.

The Kansas Bureau of Investigation, the offices of the attorney general and of the district attorney had investigated the matter. The possible purchase of a sprinkler system had been informally considered in connection with insurance coverage. The purchase was ultimately abandoned as being unnecessary. The insurance was obtained without installing the sprinkler system. The investigation revealed that no contract of purchase was in existence. The seller of the system had merely submitted a proposal to the board. The proposal was never approved or accepted. The investigations resulted in the conclusion that there was no evidence that any crime was committed. This was generally brought to light in the community and the respondent knew or should have known his charges in connection therewith were false.

After having examined the statements made by the respondent in an effort to delineate the boundary between acceptable regulation and impermissible restraint on freedom of expression, we hold that first amendment rights in this case cannot protect the respondent from disciplinary action. He was guilty of intentionally publishing known falsehoods which were used for the purpose of attempting to gain personal advantage by misleading the public. In so doing he engaged in conduct involving dishonesty and misrepresentation which raises questions as to his ability to represent clients honestly. This is an area where the State does have a significant interest in prescribing and enforcing standards of attorney conduct.

J. R. Russell is hereby publicly censured for violation of DR 1-102(A)(4). 225 Kan. xciii.

## II

We now turn to the Soptick complaint. The complaint concerns the representation by J. R. Russell of complainant, Paul R. Soptick, on a personal injury and property damage claim arising from a car accident. A minor daughter of the complainant was driving the family car when she was struck from behind by a vehicle owned and driven by Edward Willis. Willis was not insured. J. R. Russell was retained by Soptick on April 19, 1978. Soptick signed a contract for employment with Russell which provided for a 50% contingent fee, and in addition Soptick paid Russell $300.00 for a retainer plus $43.00 court costs. A petition was filed in court April 26, 1978, but summons was returned without service. Willis could not be located. Frequent and numerous attempts by Sop-

tick thereafter to contact Russell were unsuccessful. Russell's secretary was instructed by Soptick to have Russell call when he was available. He failed to do so. As late as August 14, no service of summons had been obtained on Willis. Soptick met Russell on the street and arranged for a meeting in Russell's office for September 13, but Russell did not make it to the meeting. Soptick then left a request to call him but again received no response. The case had languished in the court without summons being served for five months. Soptick sent a complaint to the disciplinary administrator. Russell notified Soptick on September 22 he was withdrawing from employment. Soptick's complaint against Russell then was dismissed on December 6, 1978. Soptick understood the $300.00 retainer was to be refunded and notified Russell to that effect. Soptick attempted twice to contact Russell but was unsuccessful. Soptick then renewed his complaint against Russell with the disciplinary administrator. A formal complaint was again issued against Russell and two days later Russell refunded the retainer fee and filed a motion in the court to withdraw as attorney for the Soptics.

The panel found that respondent, after filing the petition, took no further action to pursue Soptick's claim. Russell kept no time records, recorded no contacts with the Soptics, and introduced no evidence as to the amount of fee, if any, earned by him. The panel concluded there were several violations of the disciplinary rules governing the attorney-client relationship. The first was DR 2-110 relating to withdrawal from employment which requires the attorney to obtain permission for withdrawal from the court in which a case is pending before terminating the client-attorney relationship. The attorney is required to deliver all papers to the client and refund any part of an advance fee which has not been earned. The panel found the respondent failed to comply with this rule until he was under the compulsion of the second disciplinary proceeding.

The panel further found a violation of DR 6-101(A)(2) and (3), in failing to act competently, in attempting to handle a legal matter without adequate preparation and in neglecting a legal matter entrusted to him. The panel found a violation of DR 7-101 in failing to carry out the contract of employment entered into with the client. The panel further found that the respondent violated DR 7-102(A)(2) in knowingly making a false statement of

fact in the petition filed on behalf of the daughter of Paul R. Soptick by stating she had incurred over $500.00 in medical services and had met the threshold requirements of the so-called "no-fault" insurance law, K.S.A. 1979 Supp. 40-3117.

We turn now to the arguments of respondent. He first contends that when the complaint was referred to the disciplinary administrator, investigated by the Kansas Board for Discipline of Attorneys and dismissed for insufficient evidence, this resulted and had the same effect as a dismissal of a court case on the merits. He argues dismissal was with prejudice against filing the second complaint on the same matter. Respondent equates our procedure in disciplinary hearings with the rules of civil procedure, specifically K.S.A. 60-241(a). This statute is not helpful to respondent for the statute provides: "Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice." It should be noted, however, the only application of the Code of Civil Procedure in disciplinary hearings appears under Rule 211, Rules of the Supreme Court, 225 Kan. lxxxvi, where the rules of evidence are made applicable to hearings before the panel, nothing more.

Both parties cite the case of *State Bar v. Woll*, 401 Mich. 155, 257 N.W.2d 650 (1977), which holds the Michigan State Bar Grievance Board and its hearing panel has the authority to dismiss a complaint against an attorney with or without prejudice. Authority for this appears in the Rules of the Michigan State Bar, rules 16, 16.11 and GCR 1963, 504.1 (2). The Michigan holding is logical and practical.

In the present case the letter of dismissal merely notified respondent that the state board had directed the disciplinary administrator to dismiss the complaint. Nothing was said about prejudice. The initial investigation provided for in Rule 210, Rules of the Supreme Court, for discipline of attorneys, is for the purpose of determining "probable cause to believe there has been a violation of the Code of Professional Responsibility" which may require formal discipline. The nature of the investigative portion of the proceedings, before formal hearings begin, are more in the nature of a preliminary hearing, the dismissal of which should not have the force of res judicata. *Bernard v. State*, 261 So. 2d 133 (Fla. 1972); Annot., 49 A.L.R.3d 1039. Jeopardy attaches in a nonjury trial when the trial begins, not before. *Cox v. State*, 205 Kan. 867, 473 P.2d 106 (1970).

Accordingly we hold a review committee of the Kansas Board for Discipline of Attorneys has the authority to dismiss a complaint against an attorney with or without prejudice under Rule 210, Rules of the Supreme Court; and when dismissal is ordered without specifying the nature of the dismissal the dismissal is without prejudice to the filing of later proceedings on the same matter.

Although disciplinary proceedings against attorneys are neither civil or criminal (*State v. Holmes*, 218 Kan. 531, 545 P.2d 343 [1976]) such proceedings have frequently been characterized as quasi-criminal in nature for purposes of considering the application of procedural safeguards. *In re Ruffalo*, 390 U.S. 544, 20 L.Ed.2d 117, 88 S.Ct. 1222, *reh. denied* 391 U.S. 961, 20 L.Ed.2d 874, 88 S.Ct. 1833 (1968). The sanctions threatened under such proceedings, loss of professional status and livelihood, have been equated to criminal penalties for the purposes of deciding whether the clause against self-incrimination of the Fifth Amendment applied in such proceedings. *Spevack v. Klein*, 385 U.S. 511.

A complaint which was previously dismissed without prejudice after an investigation under Rule 210, Rules of the Supreme Court, is not barred under theories of res judicata or double jeopardy from a hearing if it appears additional facts may be developed which were not available or known during the initial investigation. Here a promise was made to withdraw from the case and to refund the retainer fee. That promise was not kept until after the second formal complaint was served. Neither res judicata nor double jeopardy precluded action under the second complaint.

The final issue raised by respondent concerns alleged violations of certain rules of conduct under the Code of Professional Responsibility which respondent claims were not properly disclosed to him by the formal complaint. After examining each of these matters raised by respondent we believe they were sufficiently encompassed within the Soptick complaint as to meet due process requirements in the filing of a disciplinary complaint. The formal complaint did provide the respondent adequate notice of the alleged misconduct for him to properly defend the action. See *In re Ruffalo*, 390 U.S. 544; *State v. Berkley*, 214 Kan.

571, 520 P.2d 1255 (1974); *State v. Turner,* 217 Kan. 574, 538 P.2d 966 (1975).

However, the hearing panel found a violation of DR 7-102(A)(1) and (2) in that he "[k]nowingly made a false statement" in the petition he filed with the court involving the Soptick tort action. The panel found the petition in the action erroneously stated the threshold requirement for medical expenses of $500.00 was met under the Kansas Automobile Injury Reparations Act as required in K.S.A. 1979 Supp. 40-3117(*b*). The threshold must be met to permit a person to recover for pain, suffering, mental anguish and inconvenience. The petition in the case was never heard by the court. It has been held that this monetary threshold requirement of the statute may be met not later than the date of trial or the date the cause of action is barred by the statute of limitations, whichever first occurs. *Key v. Clegg,* 4 Kan. App. 267, Syl. ¶ 5, 604 P.2d 1212, *rev. denied* March 7, 1980. Time for proving the monetary threshold requirement had not yet arrived and although the statement in the petition may have been technically incorrect at the time the petition was drawn, it can hardly be said respondent intentionally meant to mislead the parties or the court thereby. No discipline can be based thereon.

After examining the various contentions of the respondent we find he did neglect a matter entrusted to him and did not act promptly in keeping his promise to withdraw from the case and refund the retainer fee. J. R. Russell is hereby publicly censured for violation of DR 2-110(A)(1) and (3), DR 6-101(A)(2), and DR 7-101(A)(1).

PRAGER, J., concurring and dissenting.

While concurring with the majority decision with respect to the Soptick complaint, I respectfully dissent as to the majority decision on the Haas complaint. The majority has correctly noted the general rule recognized in *State v. Nelson,* 210 Kan. 637, 640, 504 P.2d 211 (1972), that an attorney's constitutional right of free speech is tempered by his obligation to the courts and the bar, a limitation not imposed upon the ordinary citizen. Because of the seriousness of any state infringement upon a constitutionally protected freedom, the court has properly limited its ability to discipline attorneys for violations of the Code of Professional Responsibility only in those instances where the exercise of the constitutional right infringes upon some significant state interest.

In defining the scope of a significant state interest, this court has approved the rationale of *Polk v. State Bar of Texas,* 374 F. Supp. 784, 787-788 (N.D. Tex. 1974), which holds that the state has a significant interest only when the attorney's conduct reflects on his ability to represent his clients competently and honestly, or interferes with the administration of justice. The majority in this case has concluded that respondent's campaign advertisement contained statements which he should have known were false, thereby adversely reflecting on his ability to represent his clients competently and honestly. It is with this conclusion that I disagree.

In *Polk v. State Bar of Texas,* 374 F. Supp. 784, the attorney Polk had made derogatory statements about the professional conduct of the prosecuting attorney and judge in a criminal case in which Polk was the defendant. The court found the statements insufficient grounds for discipline, as Polk's statements were made in the capacity of a private citizen and outside his professional status as an attorney. The court concluded that while, in some instances, discipline might be appropriate, in that case there was no evidence that Polk's conduct in any way affected either his representation of his clients or the administration of justice. In the case at bar, there is, likewise, a lack of showing that the statements made by respondent Russell adversely affected his ability to represent his clients or the administration of justice. This case is, therefore, readily distinguishable from those cases in which discipline was held appropriate for abusive and unfounded attacks on the integrity of an incumbent judicial candidate, as undermining the effectiveness of the judge and the administration of justice. See the cases cited in 57 A.L.R.2d 1362, Attorney's Conduct in Political Campaign as Ground for Disbarment or Other Disciplinary Action. See also *In Re Sawyer,* 360 U.S. 622, 3 L.Ed.2d 1473, 79 S.Ct. 1376 (1959) (conduct did not impugn integrity of the trial judge, and, therefore, did not obstruct the orderly administration of justice).

I, likewise, cannot agree with the majority's conclusion that, because Section 11 of the Kansas Bill of Rights specifically states that a person exercising his right to free speech is responsible for abuse of that right, it should follow that respondent in this action is to be subjected to professional discipline for his campaign advertisement. In Kansas, a political candidate puts his qualifi-

cations into issue, and any comment thereon, however injurious, is privileged so long as the comment is made in good faith. See *Good v. Higgins,* 99 Kan. 315, 161 Pac. 673 (1916); *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281 (1908); and *State v. Balch,* 31 Kan. 465, 2 Pac. 609 (1884). This rule is in accord with the more recent decisions that a communication which is qualifiedly privileged is not libelous unless actual malice is pleaded and proved. *Bradford v. Mahan,* 219 Kan. 450, 456, 548 P.2d 1223 (1976). A candidate for political office has a cause of action in defamation under Kansas law for false criticism by his opponent only when such criticism is motivated by malice. In the present case, counsel for the disciplinary administrator in his brief has conceded that the publication here in issue was in all likelihood privileged under the law of libel and slander.

Where, as here, the attorney was acting outside of his professional capacity in the exercise of his constitutional right to free speech and the offending conduct could not reasonably affect his representation of clients or interfere with the administration of justice, there is no sound basis for professional discipline. The threat of discipline in such a case will have the effect of chilling an attorney's exercise of his right to free speech by discouraging him from entering into and participating fully in the political process. I, therefore, respectfully dissent.