No. 88,205

In the Matter of CORTLAND E. BERRY, *Respondent*.

(50 P.3d 20)

Opinion filed July 12, 2002.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was on the formal complaint for the petitioner.

*Richard E. Jones*, of Jones Law Office, Topeka, argued the cause for respondent, and *Cortland E. Berry*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Cortland E. Berry, of Newton, an attorney admitted to the practice of law in Kansas.

Complaints filed against the respondent alleged that the respondent violated KRPC 1.1 (2001 Kan. Ct. Annot. 312) (competence); KRPC 1.3 (2001 Kan. Ct. R. Annot. 323) (diligence); KRPC 1.4 (2001 Kan. Ct. R. Annot. 334) (communication); KRPC 3.1 (2001 Kan. Ct. R. Annot. 397) (meritorious claims and contentions); KRPC 3.2 (2001 Kan. Ct. R. Annot. 398) (expediting litigation); KRPC 3.4 (2001 Kan. Ct. R. Annot. 406) (fairness to opposing party and counsel); KRPC 3.5 (2001 Kan. Ct. R. Annot. 409) (impartiality and decorum of tribunal); and KRPC 8.4 (2001 Kan. Ct. R. Annot. 437) (misconduct).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The respondent appeared in person and through counsel, Richard Jones, and the Disciplinary Administrator appeared by and through Alexander M. Walczak, Deputy Disciplinary Administrator.

Based upon clear and convincing evidence, a unanimous panel made the following findings of facts and conclusions of law.

### "Findings of Fact

"1. Cortland E. Berry is an attorney at law. . . .

*"Myers Complaint*

"2. In 1990 or 1991, James Hilliard approached the Respondent and asked that he assist him with some difficulties he was having with the city of Peabody, Kansas. Complaint regarding Mr. Hilliard's properties located in the city had been lodged, and the city was preparing to take action against Mr. Hilliard. The Respondent agreed to represent Mr. Hilliard and filed suit against the city in the United States District Court for the District of Kansas. Mr. Hilliard's federal case was later dismissed based upon the 'abstention doctrine.'

"3. In 1991, the city of Peabody, Kansas, commenced administrative proceedings against Mr. Hilliard for the abatement of nuisances and the repair or removal of unsafe or dangerous structures. While Mr. Hilliard appeared at one administrative hearing, Mr. Hilliard failed to appear at subsequent administrative hearings. Consequently, the city issued abatement orders. Mr. Hilliard did not appeal the administrative abatement orders.

"4. Thereafter, on December 3, 1991, the city, seeking to enforce the administrative orders previously issued, filed a petition in the District Court of Marion County, Kansas. On January 3, 1992, the Respondent filed an answer and counterclaim on behalf of Mr. Hilliard. The counterclaims included allegations of harassment, racial discrimination, defamation, and fraudulent misrepresentation. However, the Respondent failed to plead those claims with particularity.

"5. The city filed a timely motion to dismiss the counterclaims. The Respondent failed to respond to the city's motion to dismiss.

"6. On February 17, 1992, the city provided discovery requests to the Respondent. Initially, the Respondent failed to respond to the requests for discovery. As a result, counsel for the city filed a motion to compel discovery. The court scheduled a hearing on the motion to compel for November 3, 1992, by telephone conference call. The Respondent failed to participate in the conference call. Consequently, the court granted the city's motion to compel. Ultimately, it took the Respondent more than nine months to adequately respond to the city's requests for discovery. In the discovery provided, the Respondent made it known that Mr. Hilliard abandoned the claims of defamation and fraudulent misrepresentation.

"7. On April 16, 1993, the city filed a motion for summary judgment. While the Respondent provided a response to the motion for summary judgment, he failed to comply with Kan. Sup. Ct. R. 114 regarding references to the evidentiary record. The motion for summary judgment was set for hearing by mutual agreement of the parties. The Respondent failed to appear at the hearing. Judgment was entered in the city's favor and the Respondent appealed. There was no evidence presented to indicate that any stay of the judgment was requested or granted pending the appeal.

"8. On May 16, 1994, the case was scheduled for an evidentiary hearing to determine whether Mr. Hilliard's properties remained in violation of the cleanup orders. On the morning of May 16, 1994, the Respondent filed a motion to dismiss for lack of jurisdiction. The court went forward with the evidentiary hear-

ing, and found that the properties were in violation of the applicable ordinances. Because the appeal from the order for summary judgment was still pending in the Court of Appeals, the court provided Mr. Hilliard with additional time to clean up the properties. The deadline for compliance was set for sixty days following the issuance of a final ruling on the appeal.

"9. Regarding the Respondent's motion to dismiss, the court ordered the Respondent to file a brief in support of the motion within thirty days, if the Respondent desired to have a ruling on his motion. The Respondent failed to file a brief in support of his motion.

"10. On November 23, 1994, the Kansas Court of Appeals affirmed the judgment of the district court. Thereafter, on February 7, 1995, the Kansas Supreme Court denied the Respondent's petition for review.

"11. In accordance with the district court's previous ruling, Mr. Hilliard had until April 8, 1995, to comply with the clean-up orders. No action was taken in this case until, on April 15, 1996, the city filed a 'Motion for an Order Permitting Abatement Actions to be Taken by City.' The motion was scheduled for an evidentiary hearing on April 29, 1996.

"12. On April 20, 1996, the Respondent filed a motion for continuance of the hearing. The court denied the Respondent's motion. Then, on April 26, 1996, the Respondent filed an 'Objection and a Motion to Set Aside Judgment.' In the motion, the Respondent reasserted claims and defenses that had previously been disposed of by the trial court and by the Court of Appeals. On the morning of April 29, 1996, the Respondent filed a 'Motion to Void Judgment' and a 'Motion for Change of Judge.' By filing the 'Motion for Change of Judge,' the Respondent achieved a postponement of the evidentiary hearing.

"13. Eventually, the 'Motion for Change of Judge' was denied by the Honorable David R. Platt. In denying the Respondent's motion, Judge Platt found that, 'no reasonable person, much less a licensed attorney, would truly believe that [the facts alleged in the affidavit] form a legally sufficient basis to question the impartiality of the Judge.'

"14. In 1996, the Respondent filed a lawsuit in behalf of Mr. Hilliard against the city of Peabody, the city clerk, and the mayor, again challenging the city's actions in regard to Mr. Hilliard's property. The defendants requested that Mr. Hilliard provide certain discovery. When the discovery was not forthcoming, the defendant's filed a motion to compel and a request for sanctions. Because the Respondent failed to timely comply with the defendants' requests for discovery, the court ordered that the Respondent pay attorney fees in the amount of $300.00, by October 6, 1997. The Respondent failed to comply with the court's order. Thereafter, the Respondent provided counsel for the city with a check for $150.00. However, when the Respondent's bank was contacted, counsel for the city was informed that the check would not clear. The Respondent testified that he eventually paid the sanctions assessed.

"15. On September 26, 1997, the court concluded an evidentiary hearing on all pending motions in the city's case against Mr. Hilliard. During the course of

that hearing, the Respondent alleged that the city 'perpetrated a fraud upon the court.' The court found no evidence to support such a contention. In dismissing all of the Respondent's pending motions, the court stated: 'Again, all of these matters represent issues that were not raised by the defendants in the summary judgement proceedings herein, or were decided and foreclosed by the decision; and, accordingly, all such matters are now precluded by this Court's prior rulings.'

"The court ordered that Mr. Hilliard clean up the properties before the next hearing, scheduled for November 21, 1997.

"16. Prior to the hearing on November 21, 1997, the Respondent filed a notice of appeal. Even though the Respondent filed the notice of appeal, the district court held the hearing. At the conclusion of the hearing, the court found that Mr. Hilliard's properties remained in violation of the ordinances, 31 months after the court's deadline to clean up the property and six and one-half years after the city issued its clean-up orders. Accordingly, the court entered an order authorizing the city to abate the nuisances and remove the dangerous structures. The court ordered that the city begin the clean-up on February 1, 1998, providing Mr. Hilliard with another opportunity to clean-up the property.

"17. On January 2, 1998, the city filed a motion for sanctions. Thereafter, Judge Johnson indicated on the record that he was inclined to impose sanctions, and requested that the city provide an itemized statement of attorney fees. Shortly thereafter, Mr. Hilliard died. After Mr. Hilliard's death, the city was able to resolve the nuisance and dangerous structures issues with Mr. Hilliard's widow. Because the city was able to resolve the nuisance and dangerous structures with Mr. Hilliard, the city did not pursue the sanction of payment of attorney fees.

"18. In 1996, the city of Newton commenced an injunctive action against Samuel and Blanche Froelich. The suit was brought pursuant to the nuisance and dangerous structures ordinances.

"19. During the pendency of the action against the Froelichs, the Respondent filed frivolous and repetitive claims and motions.

"20. The city made requests for discovery, including requests for inspections. The Respondent never timely complied with a request for discovery. The Respondent refused to comply with the requests for inspections. As a result, the court held hearings on whether the city should be allowed to conduct inspections of the properties. The court ordered Mr. and Mrs. Froelich to allow the inspections.

"21. During the same time period, the Respondent filed two suits in behalf of Mr. and Mrs. Froelich. The first case was filed in Marion County District Court. The Respondent named the city of Newton, the city commissioners, and the members of the city's Beautification Advisory Board. Eventually, the Respondent dismissed the state court action. Thereafter, the Respondent filed a second case in behalf of Mr. and Mrs. Froelich in the United States District Court for the District of Kansas, alleging violations of constitutional and civil rights. In that case, judgment was entered in favor of the city following a motion for summary judgment.

"22. The city's case against Mr. and Mrs. Froelich was pending from 1996 to 1999.

### "Wheeler Complaint

"23. The Lyon County District Court appointed the Respondent to represent an indigent criminal defendant by the name of David Bourassa before the Honorable Merlin G. Wheeler. Mr. Bourassa was charged with aggravated robbery, aggravated burglary, and theft.

"24. Corey McPhail was charged with having committed criminal offenses arising out of the same incident. Steve Atherton was appointed to represent Mr. McPhail. Mr. McPhail entered a plea and, as a result, was incarcerated.

"25. While preparing for Mr. Bourassa's trial, the Respondent contacted Mr. Atherton to secure an interview of Mr. McPhail. Mr. Atherton agreed to allow the Respondent to interview Mr. McPhail. Mr. McPhail refused to meet with the Respondent.

"26. The state of Kansas subpoenaed Mr. McPhail and transported him from prison to testify at Mr. Bourassa's trial. However, the state elected not to call Mr. McPhail at the trial of Mr. Bourassa. During the trial, after the state made it known that it was not going to be calling Mr. McPhail as a witness, Judge Wheeler recessed the trial to allow the Respondent to interview Mr. McPhail. The Respondent failed to attempt to interview Mr. McPhail during the recess.

"27. The jury found Mr. Bourassa guilty of the crime of aggravated robbery. The jury acquitted Mr. Bourassa of the remaining charges.

"28. After Mr. Bourassa's trial was concluded, the Respondent met with Mr. McPhail. Mr. McPhail requested that the Respondent enter his appearance in Mr. McPhail's case. After consulting with and receiving the consent of Mr. Bourassa, the Respondent entered his appearance in Mr. McPhail's case.

"29. The Respondent appeared before Judge Wheeler in behalf of Mr. Bourassa and Mr. McPhail in separate proceedings. In Judge Wheeler's opinion, the Respondent's position in Mr. McPhail's case was in conflict with the Respondent's position in Mr. Bourassa's case. Judge Wheeler appointed independent counsel for Mr. Bourassa and Mr. McPhail to determine whether a legal conflict existed. The counsel appointed was unable to conclude that a conflict existed.

"30. Later, at a post-trial hearing, Judge Wheeler held the Respondent in contempt of court for the Respondent's reaction to the court's statement that the Respondent may have been ineffective. The exchange between Judge Wheeler and the Respondent is as follows:

'THE COURT: . . . I will inform counsel that it is a distinct possibility that this Court will on its own motion grant a new trial due to the ineffective assistance of counsel and failure to consider . . . .

'MR. BERRY: You better hold on. I don't care if you're a Judge or not, that is totally improper what you are doing here. And you got to know that. I just want it on the record. You just want to say things one way straight and don't listen to my position. Well, I'm going to get on the record whether you listen or not.

'THE COURT: Be seated or you'll be in contempt.

'MR. BERRY: I'm waiting to be in contempt because what you're doing is contemptuous.

'THE COURT: Mr. Berry, you have reached a point that I am going to hold you in contempt for your conduct. I'll deal with my sanctions in a moment.

. . . .

'THE COURT: Now, Mr. Berry, I had informed you that I wish to take up the matter of sanctions for your conduct today in Court. I have made a determination in this case that I am extremely concerned about pretrial preparation for this matter and the handling of the case through the course of the trial. You have a track record before this Court of disregard of deadlines, failure to appear on time; in fact, you missed yesterday's hearing, we continued it over to this morning. That's an inconvenience to everyone else, not the least of which was that we were scheduled to start a jury trial this morning. The sanction will be in this case that you will be removed from the Court appointment list for this judicial district. I will not tolerate . . . .

'MR. BERRY: That's what you were planning to do when you put me on the list. I want you to sanction me and I'll appeal it to a higher Court than you because your track record is also traceable and your racial bias is pretty clear, too.

'THE COURT: Mr. Berry, I have been accused racially biased too many times from you.

'MR. BERRY: Well, you've done your damage and I'll go on with my appeal.

'THE COURT: Mr. Berry, your appeals are filed across the hall in the clerk's office.

'MR. BERRY: They'll be there.

'THE COURT: You will be removed from the appointment list in this judicial district and that will be the sanction that is imposed for this hearing.

'MR. BERRY: That sanction is way out of line. It's way out of line and you know that, Your Honor.

'THE COURT: Mr. Berry, if you interrupt me one more time the sanction's going to be worse.

'MR. BERRY: Well, then impose the worst sanction because what you're doing is totally ridiculous.

'THE COURT: Are you inviting this Court to sanction you in a more decisive manner?

'MR. BERRY: Is there a more decisive manner, your Honor?

'THE COURT: If you consider your personal liberty to be important, I would say yes.

'MR. BERRY: Well, if you would go so far after doing the ultimate sanction to doing something like that, I guess you would stop at nothing.

'THE COURT: Mr. Berry, I have imposed only a sanction that says that you will not be appointed by this Court. I have not prevented you from practicing law in this Court or receiving clients on your own. Now in my mind that is—I don't know exactly what the impact of that financially is on you, but I do understand

that it is an important sanction, but in my mind it is a very minor sanction considering your conduct here and your accusations with regard to this Court accusing the Court of being racist when, in fact, I have bent over backwards on many occasions to protect your interests or protect those of your clients is, in my opinion, a personal affront and a personal attack that is unwarranted.

'MR. BERRY: And what you're doing is a personal attack on me and everything and not letting me speak, not letting me address why I was late yesterday when even Judge Royce understood. I guess I'll have to have her call you and have some other people call you. There are reasons for things when something is inexcusable, but you don't dump all apples into one basket and every incident you can think of to build your case and that's what you are attempting to do.

'THE COURT: I did not sanction you today for not appearing yesterday. I sanctioned you for your conduct today and based upon the fact that my observations in court including this case do not warrant, in my opinion, your being appointed to represent indigent defendants in this judicial district.

"31. Judge Wheeler removed the Respondent's name from the appointment list in Lyon County District Court. The Respondent did not appeal Judge Wheeler's order.

### "*Hebert Complaint* and *Minor Complaint*

"32. In October, 1998, Mario A. Minor was charged with criminal drug offenses in Saline County, Kansas. After the charges were filed, the District Court appointed the Public Defender's office to represent Mr. Minor. Specifically, Ralph DeZago was assigned to represent Mr. Minor.

"33. After being charged, but before trial, Mr. Minor approached the Respondent seeking private representation. Mr. Minor and the Respondent met for 10 to 15 minutes regarding the merits of Mr. Minor's case. The Respondent informed Mr. Minor that Mr. DeZago would be able to 'get him off.' Based upon the assurances of the Respondent, Mr. Minor testified that he proceeded to trial with Mr. DeZago as counsel. The Respondent testified that he informed Mr. Minor that in order to represent him at trial, the fee would be $1,500. Mr. Minor was unable to pay the Respondent $1,500. In either event, Mr. Minor proceeded to trial with Mr. DeZago as counsel.

"34. After the conclusion of a jury trial, Mr. Minor was convicted. Within two weeks of the conviction, Mr. Minor again contacted the Respondent at the Respondent's office. Mr. Minor and the Respondent met for approximately five to ten minutes. The Respondent agreed to represent Mr. Minor at the sentencing hearing, post-trial motions hearing, and a potential probation violation hearing. The Respondent agreed to prepare Mr. Minor for sentencing. Sentencing was scheduled for March 15, 1999. The Respondent accepted $275 for the representation.

"35. On February 3, 1999, the Respondent entered a formal entry of appearance and filed a motion for new trial in behalf of Mr. Minor.

"36. On Friday, March 12, 1999, the Respondent personally obtained a copy of the presentence investigation report regarding Mr. Minor. At the time that the Respondent obtained a copy of the report, the Respondent disclosed that he had not yet had the occasion to meet with Mr. Minor to prepare for sentencing.

"37. On Monday, March 15, 1999, the Respondent contacted the court, explaining that his wife was ill, that he would be late for court, and that he would prefer that the sentencing hearing be rescheduled. Judge Hebert agreed to reschedule the sentencing hearing. The sentencing was rescheduled for Tuesday, March 23, 1999, at 10:00 a.m.

"38. On March 23, 1999, at 8:45 a.m., the Respondent contacted the court and left a voice mail message. In the message, the Respondent indicted that he 'had some hearing' at 9:00 a.m., that he had overslept, and that he would not be able to attend the scheduled hearing. At 10:00 a.m., the Respondent failed to appear at the scheduled sentencing hearing. Judge Hebert rescheduled the sentencing hearing for March 24, 1999, at 9:00 a.m.

"39. The Respondent traveled to Salina and met with Mr. Minor on March 23, 1999. The Respondent visited with Mr. Minor for a few minutes. The Respondent explained to Mr. Minor that he did not have time to meet with him, because he needed to go see the judge. Judge Hebert was not available when the Respondent arrived, but the Respondent did contact Judge Hebert's administrative assistant. The Respondent was told that the sentencing hearing had been rescheduled for the following day March 24, 1999, at 9:00 a.m., and that his appearance was required.

"40. On March 24, 1999, the court held Mr. Minor's sentencing hearing. The Respondent arrived late for the sentencing hearing. The following exchange occurred at the outset of Mr. Minor's sentencing hearing:

'THE COURT: . . . This matter was originally scheduled for March 15th at 1:30. On the late request from attorney Cortland Berry, the matter was continued until March 23rd at ten a.m. For the record March 23 at ten a.m. Attorney Berry failed to appear. His appearance was not excused. Due to that failure to appear the court was required to continue the proceedings so that Mr. Minor could have legal representation. As of 1:30 yesterday afternoon the court had not been contacted by Mr. Berry. He apparently showed up in our offices sometime thereafter and was advised the proceedings would be conducted at 9:00 this morning. Nine o'clock this morning the only person in the courtroom was Assistant County Attorney Thomas Stanton who had made special arrangements with his docket to appear on short notice. Mr. Berry then arrives approximately 9:06 to the courtroom.

'Mr. Berry, in fifteen years of law practice and fifteen years on the bench I recall one other instance in which an attorney simply failed to appear for a serious proceeding. Mr. Minor advised the court both on the 15th of March and again yesterday that he'd had no contact with you with regard to these matters. Following your failure to appear yesterday, Mr. Berry, the court announced on the record that your failure to appear constituted and was adjudged and found to be in direct

contempt of this court. I'm going to call upon you at this time to show, if any you have to show, why sanctions should not be imposed for that direct contempt of this court.

'MR. BERRY: Your Honor, this court is empowered to render justice and of course has the authority to do whatever it feels advisable. All I can do is tell the court about my situation as I indicated yesterday. I called. I overslept and it doesn't happen often but it does happen sometimes when you only have a couple of hours of sleep.

'THE COURT: Well, I'm sorry, Mr. Berry, but I do consider it an extremely serious dereliction of your duties both to your client and to your obligations as an officer of the court. The address which was given the court on your entry of appearance showed a Newton address, which is an easy hour drive on the Interstate from here, and no—but in any event—there was no problem expressed when the matter was rescheduled at your request until 10:00 yesterday morning. It's a grave inconvenience, both to the docket of the court, to Mr. Stanton's schedule. He's an extremely busy man. He works long hours everyday, but it is always prompt in his appearance before the court. I guess one of the hazards of attempting to practice long-distance law and be all things to all people is that there are many inconveniences involved with the travel. It's your responsibility when you take on the representation of a person and you're entrusted with that person's life, liberty, that you fulfill your obligations both to that client and to the court.

'The court has heard an explanation but has not heard a reasonable excuse or a reasonable purge of the order of contempt. I have a serious question here at the commencement of these proceedings. . . .

'Well, I'm going to order that Mr. Berry purge himself of contempt of this court by performing twenty hours of community service and to provide written verification of that to this court at nine o'clock on Monday, April 26th, personal appearance at that time.

'MR. STANTON: I'm sorry, what was that date again, Judge?

'THE COURT: I believe it's a Monday, April 26th, at nine o'clock. Personal appearance will be required with written verification that twenty hours of community service have been performed.

'MR. BERRY: Your Honor, I want the order to be severed order if possible from today's proceedings as I intend to appeal the order.

"41. The Respondent never prepared Mr. Minor for sentencing.

"42. On March 31, 1999, Judge Hebert filed a complaint with the Disciplinary Administrator regarding the Respondent's conduct in the representation of Mr. Minor.

"43. Following sentencing, Mr. Minor continued to try to contact the Respondent. Because Mr. Minor was incarcerated, he was allowed to place only collect calls. The Respondent accepted two collect telephone calls. During those telephone calls, the Respondent told Mr. Minor that he would no longer be accepting collect telephone calls from him. Mr. Minor attempted to contact the Respondent

by letter and by sending messages through his wife. The Respondent did not respond to the requests for information.

"44. On approximately April 6, 1999, the Respondent filed a notice of appeal in behalf of Mr. Minor. The Respondent failed to timely docket Mr. Minor's appeal.

"45. The Respondent never formally withdrew from the representation of Mr. Minor.

"46. On May 14, 1999, Mr. Minor wrote to Judge Hebert complaining of the lack of communication with the Respondent.

"47. While incarcerated, a fellow inmate informed Mr. Minor of the complaint process with the Disciplinary Administrator's office. Thereafter, in May, 1999, Mr. Minor prepared a letter of complaint to the Disciplinary Administrator, and forwarded it to Judge Hebert. Judge Hebert forwarded it to the Disciplinary Administrator.

"48. Again, on May 27, 1999, Mr. Minor wrote to Judge Hebert informing him that the Respondent continued to fail to communicate with him.

"49. Because the Respondent failed to communicate with his client, Judge Hebert appointed the Appellate Defender's office to represent Mr. Minor in his appeal.

"50. At the hearing on this matter, Judge Hebert testified that the Respondent's representation of Mr. Minor at the sentencing hearing, 'was the most totally deficient performance [he had] ever seen by an attorney.' Judge Hebert went on to say that it appeared that the Respondent had done nothing for Mr. Minor.

"51. The Respondent never appealed the court's citation in contempt. To date, the Respondent has failed to perform the twenty hours of community service work, and therefore, remains in contempt of court."

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. *Myers Complaint*

a. KRPC 3.1 prohibits attorneys from bringing or defending a proceeding, or asserting or controverting 'an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.' In this case, the Respondent lacked a good faith basis when he filed repetitive and frivolous motions in the Hilliard and Froelich cases. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.1.

b. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. Because the Respondent failed to attend [the] hearing and failed to file appropriate pleadings in the Hilliard case, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

c. Lawyers are required to be fair to the opposing party and counsel. See KRPC 3.4(d). Specifically,

'[a] lawyer shall not . . . in pretrial procedure . . . fail to make [a] reasonably diligent effort to comply with a legally proper discovery request by an opposing party.'

In this case, the Respondent repeatedly failed to provide responses to discovery in the Hilliard case and the Froelich case. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.4(d).

d. It is professional misconduct for a lawyer to violate the Kansas Rules of Professional Conduct. Because the Respondent violated KRPC 3.1, 3.2, and 3.4(d) with regard to the complaint lodged by Mr. Myers, the Hearing Panel concludes that the Respondent also violated KRPC 8.4(a).

"2. *Wheeler Complaint*

a. The Kansas Rules of Professional Conduct regulate and limit a lawyer's First Amendment freedom of speech. See *In re Johnson*, 240 Kan. 334, 335, 729 P.2d 1175 (1986) and *In re Wilkinson*, 251 Kan. 546, 555, 834 P.2d 1356 (1992). Specifically, lawyers must temper their statements to judges and adjudicatory officers.

'A lawyer, as a citizen, has a right to criticize a judge or other adjudicatory officer publicly. To exercise this right, the lawyer must be certain of the merit of the complaint, use appropriate language, and avoid petty criticisms. Unrestrained and intemperate statements against a judge or adjudicatory officer lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.' *Johnson*, 240 Kan. at 336.

KRPC 3.5(d) provides that '[a] lawyer shall not . . . engage in undignified or discourteous conduct degrading to a tribunal.' In this case, the Respondent made 'unrestrained and intemperate' statements regarding Judge Wheeler and those statements amounted to undignified and discourteous conduct that was degrading to the tribunal. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.5(d).

b. Because the Respondent violated KRPC 3.5(d) with regard to Judge Wheeler's complaint, the Hearing Panel concludes that the Respondent also violated KRPC 8.4(a).

"3. *Hebert Complaint* and *Minor Complaint*

a. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Hearing Panel concludes that the Respondent failed to competently represent Mr. Minor when he failed to obtain necessary information in order to file a motion for new trial, in violation of KRPC 1.1.

b. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The Respondent failed to act with reasonable dili-

gence and promptness in representing Mr. Minor when he failed to determine appropriate issues for a motion for new trial, when he failed to timely file a Motion for Durational Departure, when he failed to meet with his client, and when he failed to appear at the scheduled sentencing hearing. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

    c. KRPC 1.4 provides:

    '(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

    '(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'

The Respondent failed to return telephone calls and respond to letters from Mr. Minor. Because the Respondent failed to even attempt to keep Mr. Minor informed about the status of his case, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a). Further, the substance of the communications failed to adequately inform Mr. Minor of his rights. This violated KRPC 1.4(b).

    d. Finally, because Respondent violated KRPC 1.1, KRPC 1.3, and KRPC 1.4(a) in his representation of Mr. Minor, the Hearing Panel concludes that the Respondent violated KRPC 8.4(a)."

The panel recommended that the respondent be suspended from the practice of law for 18 months. The rationale for its recommendation follows:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent representation, diligent representation, and adequate communication. In addition, the Respondent violated his duty to the legal system to comply with court orders. Finally, the Respondent violated his duty to the public and the legal profession to maintain personal integrity.

"*Mental State.* The Respondent intentionally violated his duties.

"*Injury.* As a direct result [of] the Respondent's misconduct, the legal profession suffered actual injury. In addition, Mr. Minor suffered at least potential injury.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has previously been disciplined on four (4) separate occasions. First, on July 9, 1991, the Disciplinary Adminis-

trator informally admonished the Respondent for having violated KRPC 8.4(d). *See* Disciplinary Administrator's Exhibit S. Then on September 24, 1992, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.1. *See* Disciplinary Administrator's Exhibit R. On November 21, 1994, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 8.4(d) *See* Disciplinary Administrator's Exhibit Q. Finally, after a hearing on a Formal Complaint in DA7356, a Hearing Panel directed that the Respondent be informally admonished for having violated KRPC 1.4 and KRPC 8.4(g). See Disciplinary Administrator's Exhibit P.

"Pattern of Misconduct. The Respondent engaged in a pattern of misconduct in the Peabody and Newton nuisance cases. The Respondent repeatedly caused delays of those matters.

"Multiple Offenses. The Hearing Panel concluded that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.1, KRPC 3.2, KRPC 3.4, KRPC 3.5, and KRPC 8.4. As such, the Hearing Panel concludes that the Respondent engaged in multiple offenses.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent begrudgingly attempted to acknowledge the wrongful nature of [his] conduct. The Respondent's attorney provided an opportunity to the Respondent to acknowledge his misconduct:

'Q. [By Mr. Jones] Okay. Did—did you—did you speak in a way—or use language in a way that you would not—would not have normally used it in talking to Judge Wheeler that day?

'A. [By the Respondent] I probably—I had never talked to Judge Wheeler like that. Of course, I had never become unglued like that, you know. I could see it coming because the judge had just told me several weeks before that it was a one-way street. And I beg your pardon, he is—he is a judge but it's not a one-way street. That's not fair. It doesn't all go from the judge to you. And he didn't give me a chance to respond, he didn't listen to me, he just made his ruling showing me what [his] power is.'

"The Respondent continues to be in violation of Judge Hebert's order assessing 20 hours of community service work. The Respondent testified about when it is appropriate to violate court orders:

'Q. [By Mr. Walczak] . . . Will you admit that you willfully and deliberately today are in defiance of that court order?

'A. [By the Respondent] I guess I am, but he has not attempted to enforce it and I don't think he will.

. . . .

'Q. And, in fact, you state on page eight of your answer that the Respondent refuses—refused and still refuses. And you have no intention to comply with that.

'A. I will disobey what I feel is—if it reaches a point that it's really—and it's really unlawful—unlawful order, because I subscribe to the dictates of—of my conscience.

"Later, during questioning by Hearing Panel Member Wynn, the following exchange regarding the same subject occurred:

'Q. [By Mr. Wynn] . . . Did you intend to convey to the Panel that you think it's okay for—to disobey orders of the court when you disagree with them as a matter of conscience?

'A. [By the Respondent] As a matter of conscience. That's—that would have to be a very special situation, because I spent all my life obeying court orders.

. . . .

'Q. So why didn't you perform the 20 hours of community service?

'A. Now that, I felt that that was totally improper. I didn't think that was a proper sanction for me. I didn't think that I should have been—I should have been sanctioned at all for that. That was something beyond my control, and I just didn't understand where that—where that was coming from.

Finally, the Respondent testified that he 'would not like to apologize' to Judge Wheeler, but would if the Hearing Panel directed him to do so.

"As depicted above, the Respondent had refused to acknowledge the wrongful nature of his conduct.

"Deceptive Practices During the Disciplinary Proceeding. During the hearing on this matter, the Respondent's testimony was often at odds. For example, during direct examination by his attorney regarding the federal lawsuit filed in behalf of Mr. Hilliard, the following exchange occurred:

'Q. [By Mr. Jones] When you filed this lawsuit, did you feel that there was a basis in law for—for what you were doing or at least a basis in law to try to—to push the envelope or change things?

'A. [By the Respondent] The basis was good enough that they couldn't get summary judgement on it. We were set to go to trial, in fact. We were on the trial docket in federal court on the racial discrimination claim.

. . . .

'Q. Was there a—a summary judgment motion filed?

'A. I believe that they went past the time to file any summary judgment.

. . . .

"MR. WYNN: So summary judgment wasn't denied, they just didn't pursue it, is that your testimony?

'THE WITNESS: Right, that would be correct. I don't recall—I looked in the file and I couldn't find a Motion for Summary Judgment, so I assumed they didn't file one or I would have had a copy. I would have filed a response to it.'

Again, during direct examination by Mr. Jones, the Respondent testified that referring to the record of a state court action regarding Mr. Hilliard, that he 'was surprised that the judge said [that the file was] voluminous.' Then, shortly thereafter, the Respondent testified that he reviewed the 'whole court file, which was two volumes.'

"The Respondent's testimony regarding his claims of racial bias was inconsistent, as follows:

'Q. [By Mr. Jones] And have you accused the judges in any of those counties other than—than—than—than Judge Wheeler of having any kind of racial animus against you?

'A. [By the Respondent] No. There's very few judges that I dislike. And Wheeler, we don't get along. That's just a fact. I don't get along with Judge Wheeler.'

Then, when questioned by the Deputy Disciplinary Administrator, the Respondent provided testimony that was at odds with other statements:

'Q. [By Mr. Walczak] You make a claim that Judge Johnson was racially biased, correct?

'A. [By the Respondent] Let me see. Yes, this is the one we filed. . . .

. . . .

'Q. Okay, specifically in paragraph—your paragraph 20 on your page nine where you say, quote, "Respondent has his suspicions about Judge Hebert's attitude towards race."

'A. Yes, I am suspicious because of—of—of the actions that—that he took that day, that morning.'

"Throughout his testimony on direct examination, cross-examination, and during examination by the Hearing Panel members, the Respondent often failed to directly answer the questions posed. Accordingly, the Hearing Panel concludes that the Respondent engaged in deceptive practices during the hearing.

"Vulnerability of Victim. In this case, Mr. Minor was a vulnerable victim of the Respondent's misconduct. Mr. Minor was incarcerated while he awaited sentencing. However, the Respondent never prepared Mr. Minor for sentencing.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1975. The misconduct found in regard to Mr. Myers began in 1992. With respect to Judge Wheeler's complaint, Judge Hebert's complaint, and Mr. Minor's complaint, the Respondent's actions occurred in 1999. Accordingly, the Hearing Panel concludes that at the time of the misconduct, the Respondent had substantial experience in the practice of law.

"After a careful review of the factors in mitigation recognized by the Kansas Supreme Court, the Hearing Panel found a lack of mitigating circumstances.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.42, Standard 6.22, and Standard 6.32. That standard provides, in pertinent part:

'Suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.' Standard 6.22.

'Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding.' Standard 6.32.

"In July, 1999, a Hearing Panel held a hearing on other disciplinary complaints regarding this Respondent. As indicated . . . above, that Hearing Panel recommended that the Respondent be informally admonished for violating KRPC 1.4 and KRPC 8.4(g). In making its recommendation, the Hearing Panel stated:

'According to Respondent he is a "crusader" who does not always cross his "t's" and dot his "i's." The Panel hopes that the Respondent will take this opportunity to reassess his practice and develop a plan that will aid him in providing the attention to detail that is required when engaging in the private practice of law. Respondent ought to consider hiring someone to assist him, instead of relying on an answering machine that frequently does not work.'

The Hearing Panel is troubled that the Respondent failed to heed the advice of the earlier Hearing Panel.

"Based upon the above findings of fact, conclusions of law, aggravating factors, and standards, the Hearing Panel unanimously recommends that Respondent be suspended from the practice of law for a period of eighteen months. Additionally, the Hearing Panel recommends that the Respondent be required to undergo a reinstatement hearing, pursuant to Kansas Supreme Court Rule 219. At the reinstatement hearing, the Respondent should be required to establish that he has formulated and implemented a plan that will prevent a repeat of the misconduct present in this case. The Respondent's plan should include an effective system of time management which will ensure that the Respondent timely files appropriate pleadings and that the Respondent timely appears in court. Additionally, the Respondent should provide verification that he has purged himself of contempt and apologized to Judge Wheeler and Judge Hebert."

The respondent filed exceptions to the final hearing report. His exceptions are more in the nature of explanations for his activity rather than a denial that violations occurred. Ultimately, the respondent contends that even assuming all violations are found to be established based on the evidence, public censure or probation, rather than suspension, would be the more appropriate sanction. The Disciplinary Administrator's office argues that the respondent's violations warrant disbarment.

Our standard of review in disciplinary cases was set forth in *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993):

"In *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971), we explained that we have a 'duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered.' In *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report of the disciplinary board 'is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony.' See *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987)."

## Myers Complaint

The respondent denies he violated KRPC 3.1 (2001 Kan. Ct. R. Annot. 397) and KRPC 3.4 (2001 Kan. Ct. R. Annot. 406) with regard to the Froelich cases. Robert D. Myers, the attorney who represented the City of Peabody against Hilliard and the City of Newton against the Froelichs, testified that each of the federal and state lawsuits filed by the Hilliards and the Froelichs resulted in summary judgment for the cities. The legal expenses for the City of Newton exceeded $100,000. Myers testified as follows:

"Q. Regarding the discovery interrogatory actions in the state and federal court proceedings of Peabody as well as Newton, did the Respondent ever provide any specifics in response to your request?

"A. No. They simple—and we deposed their clients, we deposed Mrs. Froelich probably three different times. We deposed Mr. Martel at least twice. They were never able to put forward any evidence in support of their claims. They were never able to put forward any evidence in support of their damages. We never— I can say this, that we never once got a timely request to a discovery—response to a discovery request. Not once."

The court concluded that the respondent's performance was based primarily on the respondent's discovery delays. We conclude the record supports the panel's conclusions regarding KRPC 3.1 and KRPC 3.4.

## Wheeler Complaint

The respondent denies that he violated KRPC 3.5(d) (2001 Kan. Ct. R. Annot. 409) and KRPC 8.4 (2001 Kan. Ct. R. Annot. 437). According to the respondent, Judge Wheeler provoked his verbal eruptions and his comments were justified. However, there simply is no evidence of record supporting the respondent's contention.

On the contrary, the record supports the conclusion that Judge Wheeler, based upon the exchange set forth above, acted in a reasonable and dignified manner providing no basis for the undignified conduct of the respondent. We conclude that the conduct of the respondent was degrading to the tribunal and amply supports the panel's conclusion that the respondent violated the provisions KRPC 3.5(d) and KRPC 8.4.

### Hebert Complaint and Minor Complaint

The respondent denies he violated KRPC 1.1 (2001 Kan. Ct. R. Annot. 312) and KRPC 1.4 (2001 Kan. Ct. R. Annot. 334). We have again considered the respondent's arguments regarding the Hebert and Minor complaints and conclude that there is ample evidence to support the respondent's violation of KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 8.4(a). The respondent's own testimony demonstrates that he spent little, if any, time with Minor in preparation for post-trial criminal proceedings. This is confirmed by Judge Hebert as well as testimony from Minor. It must also be observed that the respondent did not represent Minor in his criminal trial but nevertheless attempted to represent Minor in his motion for a new trial without the benefit of a client conference and without the benefit of a transcript of the trial proceeding. In addition, there is no dispute that the respondent failed to appear for the hearing on Minor's motion for new trial before Judge Hebert.

### Appropriate Discipline

The ultimate goal of disciplinary proceedings is to protect the public. See *In re Jones*, 252 Kan. 236, 239, 843 P.2d 709 (1992). Disciplinary proceedings also give the public confidence that attorneys who violate the KRPC are disciplined in a manner which is appropriate, given the specific circumstances of the case. *In re Bailey*, 268 Kan. 63, 65, 986 P.2d 1077 (1999).

The hearing panel's recommendations of sanctions in a given case are "advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator." Rule 212(f) (2001 Kan. Ct. R. Annot. 265). In determining the appropriate discipline to

be imposed for a violation of disciplinary rules, we consider the facts surrounding the violation as well as any aggravating or mitigating circumstances. *State v. Stakes*, 227 Kan. 711, 720, 608 P.2d 997 (1980).

In arriving at its recommendation, the panel relied on four factors to determine the appropriate sanctions in this case: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyers misconduct; and (d) the existence of aggravating or mitigating circumstances. The respondent fails to cite to the record in support of his contentions that the proposed recommendation by the hearing panel is too harsh. Nevertheless, we examined the four factors reviewed by the hearing panel.

(a) Duty violated. The hearing panel found the respondent violated his duty to provide competent representation, diligent representation, and to provide adequate communication. The hearing panel also found that the respondent violated his duty to the legal system by failing to comply with court orders. Finally, the hearing found the respondent violated his duty to the public and legal profession by failing to maintain personal integrity. The respondent admits he violated his duty to the legal system and failed to comply with court orders. However, the respondent denies that he violated his duty to the public and to the legal profession in failing to maintain personal integrity.

The record supports the panel's findings and conclusions. Two examples serve to highlight the respondent's violation of his duty to the public and to the legal profession in failing to maintain personal integrity. First, in the Hilliard case, the respondent sought a continuance of the city's motion for an order permitting abatement actions to be taken by the city set for April 29, 1996. Proceeding his motion for continuance were numerous delays occasioned by the respondent's discovery delays as well as the reassertion of claims that had been previously ruled upon by the court. Once all avenues for a continuance were exhausted, the respondent, on the day set for the hearing, filed a motion for change of judge. The motion was later denied as one having no merit. This forced a continuance with a frivolous motion. Second, as mentioned above, the respondent attempted to represent Minor in his motion for

new trial without communicating with Minor and without a transcript of trial court proceedings. These examples bear directly upon the personal integrity of the respondent.

(b) Mental state. The hearing panel also concluded that the respondent acted intentionally. The respondent contends that he was, perhaps, negligent but his actions were not intentional. His contention lacks merit. The evidence with regard to the Myers complaint supports the conclusion that the respondent's tactics were aimed at tiring the opposition rather than pursuing matters based on the merits of his client's case. Moreover, the respondent admitted that he intentionally defied Judge Hebert's orders. The conclusion that the respondent's actions were intentional is amply supported by evidence of record.

(c) Injury. The hearing panel concluded that the legal profession suffered actual injury and Minor, the respondent's client, suffered potential injury. The respondent agrees that Minor suffered potential injury, but disputes that the legal profession suffered any injury. However, the record supports the conclusion that the legal profession suffered injury by reason of the respondent's delaying tactics in the Myers complaint as well as his failure to comply with reasonable court orders in the Hebert complaint. The respondent's actions before Judge Wheeler must also be characterized as actual injury to the legal profession.

(d) Aggravating or mitigating factors. The hearing panel made a number of findings regarding aggravating factors but found no mitigating factors to exist.

*Prior disciplinary offenses.* The hearing panel noted as aggravating factors four occasions of prior discipline. First, the Disciplinary Administrator informally admonished the respondent on July 9, 1991, for a violation of KRPC 8.4(d). Second, the respondent was informally admonished for a violation of KRPC 1.1 on September 24, 1992. Third, the Disciplinary Administrator informally admonished the respondent on November 21, 1994, for a violation of KRPC 8.4(d). Fourth, a hearing panel found the respondent violated KRPC 1.4 and KRPC 8.4(d) on August 16, 1999.

The respondent argues that the earlier occasions of misconduct are remote and are not related to the present. However, we note

that it has only been 2 years since the respondent's last informal admonition was administered. The 1999 determination involved the respondent having filed a lawsuit on someone's behalf without informing that person. The 1994 informal admonition involved Judge John Pearson's complaint that the respondent had filed frivolous pleadings which caused unnecessary delay and a needless increase in the cost of litigation. The Myers' complaint in the case we now consider involved frivolous claims on matters that had been previously ruled on by the court. Judge Hebert testified before the hearing panel that the respondent made a generalized claim of racial bias against the prosecutor who handled the Minor case. This claim, according to Judge Hebert's testimony, was without factual basis.

The respondent further argues that he did not cause delay in the Hilliard and Froelich cases. However, the evidence of record establishes that the respondent failed to respond on numerous occasions to discovery requests. In almost every instance, the respondent had to be compelled to respond to discovery requests.

The 1991 determination involved the respondent's arguments with Judge Francis Towle. The complaint involved the respondent's having argued angrily with Judge Towle in court. Thus, the 1991 complaint is consistent with the type of misconduct demonstrated by the respondent before Judge Wheeler.

*Multiple offenses.* The hearing panel noted the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 3.4, KRPC 3.5, and KRPC 8.4 and that these violations amount to multiple offenses. The respondent implicitly admits he committed multiple offenses.

*Refusal to acknowledge wrongful nature of conduct.* The hearing panel found that the respondent refused to acknowledge the wrongful nature of his conduct. While the respondent argues that he has no reason to apologize to Judge Wheeler, the record supports a contrary conclusion bearing directly upon the panel's conclusion that the respondent refuses to acknowledge the wrongful nature of his conduct. Characteristically, the respondent maintains that Judge Hebert erred in entering the contempt order providing further support for the panel's determination.

*Deceptive practices during the disciplinary proceeding.* The hearing panel found the respondent was deceptive in the hearing. The respondent argues his inconsistent statements can be blamed on faulty memory. While the panel's conclusion of deceptiveness is based upon sharply conflicting testimony of the respondent and other evidence of record, the panel's conclusion is not against the clear weight of the evidence. Consistent with our standard of review, we conclude that the record amply supports the panel's conclusion.

*Vulnerability of the victim.* The hearing panel found Minor was a vulnerable victim because he was incarcerated and awaiting sentencing. Remarkably, the respondent disputes that Minor, "having been found guilty of committing serious crimes," was not a vulnerable victim.

*Substantial experience in the practice of law.* The hearing panel found the respondent had been practicing law in Kansas since 1975 and that the misconduct did not begin until 7 years later.

*Personal or emotional problems.* The respondent told the hearing panel he hurt his back in 1997 and had the flu twice from October 1997 until February 1998. Judge Powers recalled the respondent might have been suffering from back problems. The respondent mentioned that his medical problems caused a financial strain.

*Character or reputation.* The respondent argues that "[p]rior to 1997," he "enjoyed the respect of his peers and generally possessed a good character and reputation" and that he was "regaining that respect in the Wichita area." However, the record tends to support a contrary conclusion based upon the violations set forth above.

The findings and conclusions of the hearing panel are supported by clear and convincing evidence. We adopt the findings and conclusions and agree with that part of the panel's recommendation that the respondent be suspended from the practice of law in this state. We believe the sanction imposed by this court is sufficient to address the respondent's violations. The recommended apologies and the purging of contempt are matters the respondent must resolve.

IT IS THEREFORE ORDERED that Cortland E. Berry be and he is hereby suspended from the practice of law for 18 months in the state of Kansas commencing on the date of this opinion.

IT IS FURTHER ORDERED that the respondent undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219 (2001 Kan. Ct. R. Annot. 285).

IT IS FURTHER ORDERED that the respondent shall comply with the provisions of Kansas Supreme Court Rule 218 (2001 Kan. Ct. R. Annot. 276), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.