No. 88,340

In the Matter of KRIS LYNN ARNOLD, *Respondent.*

(56 P.3d 259)

Opinion filed October 25, 2002.

*Franklin D. Diehl,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with him on the brief of the petitioner.

*Kris Lynn Arnold,* respondent, argued the cause and was on the brief *pro se.*

*Per Curiam:* This is an original contested proceeding in discipline filed by the Disciplinary Administrator against respondent Kris Lynn Arnold of Prairie Village, an attorney admitted to the practice of law in the state of Kansas.

Complaints filed alleged the respondent violated Rule 220 (2001 Kan. Ct. R. Annot. 290) (engaged in practice of law while on disability inactive status); KRPC 5.5 (2001 Kan. Ct. R. Annot. 424) (unauthorized practice of law); KRPC 8.2 (2001 Kan. Ct. R. Annot. 435) (false or reckless statements regarding qualifications and integrity of a judge); KRPC 8.4(a), (d), and (g) (2001 Kan. Ct. R. Annot. 437) (misconduct).

Respondent filed an answer, and a hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The respondent appeared pro se. The Disciplinary Administrator appeared by and though Frank D. Diehl, Deputy Disciplinary Administrator.

The hearing panel issued the following report:

"The Respondent objected to the notice of hearing, asserting that the Disciplinary Administrator failed to comply with Kan. Sup. Ct. R. 211(c), which provides:

'Following the service of the answer, or upon respondent's failure to answer, and upon completion of any additional investigation deemed necessary or advisable by the Disciplinary Administrator, the matter shall be set for hearing by the presiding officer of the panel.'

"In this case, the Formal Complaint and Notice of Hearing were filed on the same date, in violation of Kan. Sup. Ct. R. 211(c). The Respondent failed to

establish that he suffered any prejudice as a result of that violation, and the Hearing Panel overruled the Respondent's objection.

"The Respondent also objected to the jurisdiction of the Hearing Panel. Specifically, the Respondent asserted that the Hearing Panel lacked jurisdiction to hear any allegations that the Respondent violated the Kansas Rules of Professional Conduct in conjunction with the case he filed in the United States District Court for the District of Kansas. In his filings with the United States District Court, the Respondent included his Kansas Supreme Court number. Kan. Sup. Ct. R. 201 establishes the jurisdiction of the Court, and therefore, the jurisdiction of the Hearing Panel:

'Any attorney admitted to practice law in this state and any attorney specially admitted by a court of this state for a particular proceeding is subject to the jurisdiction of the Supreme Court and the authority hereinafter established by these Rules.'

"The jurisdiction of the Kansas Supreme Court and the Kansas Board for Discipline of Attorneys is not limited to practice in the state courts of Kansas. The Court has previously held that '[l]awyers are subject to discipline for improper conduct in individual, personal, or business activities.' *In re Jones,* 252 Kan. 236, Syl. ¶ 2, 843 P.2d 709 (1992). Accordingly, the Hearing Panel overrules the Respondent's objection to the jurisdiction of the Hearing Panel.

"During the course of the hearing, the Disciplinary Administrator offered, and the Hearing Panel admitted, Exhibits A through G into evidence. The Respondent offered, and the Hearing Panel admitted, Exhibits 3, 4a, 4b, 4c, 4d, 4e, 4f, 5, 6, and 7 into evidence.

"The matter then proceeded to the taking of testimony. The Disciplinary Administrator called the Honorable Lawrence E. Sheppard, Michael K. Seck, and the Respondent to testify. The Respondent presented testimony in his own behalf.

"After hearing the testimony presented and the arguments of the parties, and after reviewing the exhibits admitted into evidence, the Hearing Panel finds, by clear and convincing evidence, as follows:

## "FINDINGS OF FACT

"1.  Kris L. Arnold (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 09035. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Prairie Village, Kansas . . . . The Respondent was admitted to the practice of law on September 15, 1976. On his annual registration form filed in 1992, the Respondent requested that he be placed on disabled inactive status. Without hearing, the Respondent was placed on disabled inactive status. The Respondent remains on disabled inactive status.

"2.  On March 14, 1994, the Respondent incorporated Grand Design Golf, Ltd. (hereinafter 'Grand Design Golf') in the state of Kansas. Grand Design Golf is a corporation in good standing. The Respondent serves as Grand Design Golf's president and is its sole shareholder.

"3. On February 8, 2000, the City of Olathe issued a request for companies to submit bids to renovate the local golf course. Grand Design Golf, along with other companies submitted proposals. The city of Olathe did not accept the bid of Grand Design Golf.

"4. Because the City of Olathe did not accept the bid of Grand Design Golf and because the Respondent took issue with the selection process, in 2000 the Respondent filed a lawsuit against the City. The Respondent filed the suit in his own behalf and in behalf of Grand Design Golf. The named defendants included the mayor, the city attorney, the city manager, the purchasing manager, and the parks and public grounds director. The suit was filed in the United States District Court for the District of Kansas, case numbered 002057JWL.

"5. In the suit, the Respondent sought 'actual monetary damages in excess of $1,000,000, and such exemplary damages as are found to be appropriate.'

"6. Below the Respondent's signature appeared the Respondent's name and Kansas Supreme Court number. Additionally, the Respondent identified himself as 'Attorney for Plaintiffs.'

"7. The lawsuit filed in federal court was later dismissed. The Respondent appealed the order of dismissal to the United States Court of Appeals for the Tenth Circuit.

"8. On May 2, 2000, the Respondent initiated a second lawsuit, styled *Grand Design Golf, Ltd. a Kansas Corporation, and Kris Arnold, individually, being its president and sole shareholder v. City of Olathe, Kansas*, in the District Court of Johnson County, Kansas, case numbered 00CV02174. In this action, the Respondent included the following prayer for relief:

'WHEREFORE, plaintiffs pray that the Court find defendant City of Olathe's selection process complained of to be unlawful, corrupted, and void, and that the Court issue appropriate additional findings and orders, including temporary restraining order and temporary and permanent injunction, requiring defendant to restart a lawful, legitimate, fair and impartial selection that guarantees that plaintiff's proposal be reviewed in detail by unbiased city officials. Alternatively, plaintiffs seek findings and orders of the Court that their proposal for the complete renovation of the Olathe municipal golf course is substantially superior to all competing proposals, and must be accepted by defendant under its own policies and procedures. Plaintiffs further seek such Court supervision of said selection process, either directly or through an appointed master, as will ensure that said process is unbiased, fair and impartial.'

"Below the Respondent's signature appeared the Respondent's name and Kansas Supreme Court number.

"9. On May 15, 2000, after learning that the Respondent is registered as a disabled inactive attorney, Michael K. Seck, counsel for the City of Olathe, wrote to the Disciplinary Administrator's office, questioning whether it was permissible for the Respondent to represent Grand Design Golf. The letter was treated as a complaint and formally docketed as DA 7941.

"10. After learning that the United States District for the District of Kansas dismissed the Respondent's action pending in that court, the Disciplinary Administrator, believing that all litigation filed by the Respondent in behalf of Grand Design Golf had been concluded, sought and received permission to dismiss the complaint filed by Mr. Seck pursuant to Kan. Sup. Ct. R. 209.

"11. On August 7, 2000, the Respondent wrote to the Disciplinary Administrator, informing him of the existence of the state case. Additionally, the Respondent made the following 'observations and suggestions':

'1) I don't want to violate any Supreme Court Rule or Disciplinary Rules, but Grand Design Golf does, it seems to me, have a right to a ruling on this question that can be later appealed, if necessary. 2) The District Court seems the proper forum in which to obtain such a ruling. 3) The proper procedure to obtain such a ruling would in my opinion be by motion to disqualify counsel from representing the corporation, which could be brought by Mr. Seck, or I would have no objection to your office moving to intervene in the case and bringing such a motion yourselves. . . . But there ought to be a way for us to obtain a decision in a court of record without me having to go through a disciplinary proceeding . . . .'

"12. Thereafter, because the Respondent continued to represent Grand Design Golf in federal and state court, the Disciplinary Administrator reinstated Mr. Seck's complaint. On August 10, 2000, the Disciplinary Administrator replied to the Respondent as follows:

'In your letter you have requested that a determination be made by either the federal or state court as to your eligibility to practice law. I suppose that either you or Mr. Seck could bring this issue to the attention of either court. I certainly have no intention of intervening in either case. Ultimately, I believe the question of your eligibility to practice law is an issue to be decided under the Rules of the Kansas Supreme Court. I would appreciate being advised of any ruling made by the federal or state court on this issue.'

"13. On August 23, 2000, Mr. Seck filed a 'Motion to Strike Pleadings of Plaintiff Grand Design Golf, Ltd. and or Motion to Disqualify Kris Arnold.' The district court scheduled a hearing on Mr. Seck's motion for September 22, 2000.

"14. At the September 22, 2000, hearing, Judge Sheppard granted Mr. Seck's motion to disqualify the Respondent. After ruling on the motion, the following exchange between Judge Sheppard and the Respondent occurred:

'MR. ARNOLD: . . . I do have one question regarding the court's ruling on the motion for protective order. I am unclear as to what the court has ruled and ordered here.

'THE COURT: Well, I'll stand by what I said and I'll look at the draft of Mr. Seck and if it needs to be supplemented, I'll do so. You prepare it from your notes and/or the record if you need to refer to it, Mr. Seck.

'MR. SECK: Your Honor, I'll be glad to. The only remaining thing that I would like to mention is there is an outstanding motion for summary judgment

and I will request that we not be required to respond to that until eleven days after we take Mr. Arnold's deposition, assuming he obtains legal counsel.

'MR. ARNOLD: Has the court ruled that I am prohibited as an individual from contacting any person in Olathe city government regarding the golf course?

'THE COURT: I have made a ruling. I'm not going to muddle it. With regard to your —

'MR. ARNOLD: You're refusing to clarify your order?

'THE COURT: Excuse me, don't argue with me.

'MR. ARNOLD: Are you refusing to clarify your order?

'THE COURT: Excuse me, Mr. Arnold —

'MR. ARNOLD: Are you refusing to clarify your order?

'THE COURT: — do not argue with the court. You are subject to direct contempt, I want to caution you of that.

'MR. ARNOLD: I apologize.'

. . . .

"15. Within hours of the conclusion of the hearing held on September 22, 2000, the Respondent sent Judge Sheppard a letter, *via* facsimile. The letter read as follows:

'Judge Sheppard:

'Before the hearing this morning, it had been almost exactly nine years since I had set foot in courtroom. Your performance and attitude amply demonstrated to me why that nine year period was far too short.

'*Please* seriously consider retiring from the bench. You simply don't have what is required to decide the kind of issues that you were presented with in this case. Your threat to dismiss the entire case, your ridiculous allowance (originally) of only 15 days to secure alternate counsel, and your refusal to clarify your order prohibiting me from communicating with Olathe officials, was the last straw.

'Your absurdly fastidious insistence on decorum and demeanor mask an underlying incompetence. You act like a robot. Do yourself and Johnson County litigants a great favor and get off the bench now.

'Either you recuse yourself from further participation in this case, or I will fill (*sic*) a motion seeking reassignment to a competent judge. Also, be prepared for an ethical complaint concerning your refusal to clarify your "muddled" order this morning.

'Yours, etc.
'Kris Arnold, Pres.'

"A copy of the letter was also sent, *via* facsimile, to Mr. Seck.

. . . .

"16. Judge Sheppard, on September 25, 2000, contacted the Disciplinary Administrator's office, and notified them of the Respondent's actions in this case. Judge Sheppard's letter was docketed for investigation as complaint number DA 8038.

"17. At the hearing on this matter, the Respondent testified that oral and written communications with Judge Sheppard were not violative of the Kansas Rules of Professional Conduct:

'MR. ARNOLD: . . . I don't think that there is anything in my letter to Judge Sheppard that even remotely would constitute grounds for discipline. Number one, it may have been offensive to Judge Sheppard, but I don't think it's unethical to insult a Kansas District Court judge. I don't think it's unethical to do that. . . . I think that our constitution, the First Amendment, controls. I think I have a right to say these things. . . . [W]e're here because he was offended. And I can understand why he was offended, but he should understand why I felt it necessary to write the letter. . . .

. . . .

'MR. ARNOLD: . . . And I know that Mr. Hazlett in his complaint suggests that I was—had done something improper in the courtroom on September 22nd, but I think any fair reading—any fair reading of that transcript would suggest that I did nothing improper whatsoever. I asked the Judge to clarify his ruling. He refused. I asked him again and he refused. . . . I find it very difficult to understand how that's grounds for discipline.'

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. Kan. Sup. Ct. R. 208(a) provides, in pertinent part, as follows:

'Attorneys may register as: active, inactive; retired; or disabled due to mental or physical disabilities. Only attorneys registered as active may practice law in Kansas.'

"Beginning in 1992, the Respondent registered as a disabled inactive attorney. Attorneys registered as disabled inactive are prohibited from practicing law.

"2. Kan. Sup. Ct. R. 202 details the "grounds for discipline," in pertinent part, as follows:

'. . . All other civil judgments shall be prima facie evidence of the findings made therein and shall raise a presumption as to their validity. The burden shall be on the respondent to disprove the findings made in the civil judgment.'

"(emphasis added). Judge Sheppard disqualified the Respondent from representing Grand Design Golf because the Respondent was not an 'active' attorney and, therefore, not authorized to practice law. The evidence presented by the Respondent was insufficient to rebut the presumption of Kan. Sup. Ct. R. 202, and as a result, the Hearing Panel is bound by Judge Sheppard's ruling and concludes that the Respondent was acting as the attorney for Grand Design Golf at a time when

he was not authorized to practice law, in violation of KRPC 5.5(a) which prohibits attorneys from 'practic[ing] law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.'

"3.    The Hearing Panel further concludes that by representing Grand Design Golf in the United States District Court for the District of Kansas, the Respondent engaged in the unlawful practice of law, in violation of KRPC 5.5(a) and Kan. Sup. Ct. R. 208(a).

"4.    The Kansas Rules of Professional Conduct regulate and limit a lawyer's First Amendment freedom of speech. *See In re Johnson*, 240 Kan. 334, 335, 729 P.2d 1175 (1986) and *In re Wilkinson*, 251 Kan. 546, 555, 834 P.2d 1356 (1992). Specifically, lawyers must temper their statements to judges and adjudicatory officers.

'A lawyer, as a citizen, has a right to criticize a judge or other adjudicatory officer publicly. To exercise this right, the lawyer must be certain of the merit of the complaint, use appropriate language, and avoid petty criticisms. Unrestrained and intemperate statements against a judge or adjudicatory officer lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.'

*Johnson*, 240 Kan. at 336.

"5.    KRPC 8.2 provides:

'A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory or public legal officer, or of a candidate for election or appointment to judicial or legal office.'

In this case, the Respondent made 'unrestrained and intemperate' statements regarding Judge Sheppard that he knew or should have known were false. As such, the Hearing Panel concludes that the Respondent violated KPRC 8.2.

"6.    It is professional misconduct for a lawyer to engage in activity that adversely reflects on his fitness to practice law. *See* KRPC 8.4(g). In this case, the Hearing Panel concludes that the Respondent engaged in such conduct, in violation of KRPC 8.4(g), by writing the aforementioned letter to Judge Sheppard.

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the profession.

"*Mental State.* The Respondent knowingly violated his duty to the profession.

"*Injury.* In this case, the Respondent and his own corporation were the 'clients.' It cannot be said that the Respondent caused himself injury. It is arguable, however, that the Respondent caused injury or potential injury to the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. In 1981, the Respondent was informally admonished for engaging in conduct -intemperate remarks to a judge -that was remarkably similar to the misconduct in this case.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent has never acknowledged that he engaged in misconduct. On the contrary, the Respondent maintains that his actions were appropriate.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of Dishonest or Selfish Motive. There was no evidence presented that the Respondent was motivated by dishonesty or selfishness.

"Remoteness of Prior Offenses. The Respondent's prior disciplinary offense, while relevant as to the type of misconduct found in this case, is remote in time.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 7.2 and Standard 7.3. Those standards provide, as follows:

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.'

Standard 7.2.

'Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.'

Standard 7.3. In addition, the Commentary following Standard 7.3 provides:

'Reprimand is the appropriate sanction in most cases of a violation of a duty owed to the profession. Usually there is little or no injury to a client, the public, or the legal system, and the purposes of lawyer discipline will be best served by imposing a public sanction that helps educate the respondent lawyer and deter future violations.'

"The Hearing Panel unanimously recommends that Respondent be censured and that the censure be published in the Kansas Reports. *See* Kan. Sup. Ct. R. 203(a)(3). Kan. Sup. Ct. R. 208(f)(2) requires that '[a]ny attorney whose inactive status has extended for a period in excess of five years shall be reinstated only upon full compliance with any conditions imposed by the Supreme Court for reinstatement.' In agreement with Kan. Sup. Ct. R. 208(f)(2), the Hearing Panel recommends that, in the event the Respondent seeks reinstatement from disabled inactive status, an evidentiary hearing be held to determine the Respondent's capacity to practice law.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

Respondent filed exceptions to the hearing panel's report, as allowed by Kansas Supreme Court Rule 212 (Kan. Ct. R. Annot. 263), in which he (1) took exception to the overruling of his objection to the notice of hearing; (2) took exception to compelling him to appear in a disciplinary hearing without proper action in federal court; (3) took exception to the hearing panel's factual findings in (a) paragraphs 3 and 4, (b) paragraph 13 and (c) paragraph 14; (4) took exception to the hearing panel's conclusions of law in (a) paragraph 2, (b) paragraph (3), and (c) paragraphs 4 through 6; and (5) took exception to all the recommendations of the hearing panel.

Respondent stood on his brief at the time of his appearance before the Supreme Court. In his brief, respondent contended (1) he was authorized to appear on behalf of his corporation under the authority of *Benson v. City of De Soto,* 212 Kan. 415, 510 P.2d 1281 (1973), and he, in fact, appeared as an officer of his corporation and not as its attorney even though he did place the Kansas Supreme Court number on his pleadings; (2) the United States Constitution prohibits Kansas from imposing sanctions on an attorney without a prior finding of unethical conduct by the federal court; (3) the Disciplinary Administrator's dismissal of the initial complaint because the civil action had been dismissed estopped the Disciplinary Administrator from later refiling the complaint based on the actions before Judge Sheppard; (4) his responses were protected by the First Amendment to the United States Constitution and § 11 of the Kansas Constitution Bill of Rights; (5) the panel's finding of injury to the legal profession was not based on clear and convincing evidence and the recommendation of public censure was inappropriate; and (6) the notice of hearing was a jurisdictional defect even though respondent claimed no actual prejudice.

We first review the panel's findings to determine if they are supported by clear and convincing evidence. In doing so, our standard was set forth in *In re Carson,* 252 Kan. 399, 406, 845 P.2d 47

(1992) (quoting *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 [1971]) where we stated we have a " 'duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered.' " The report of the hearing panel "is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony." *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975)

Attorneys in Kansas, once admitted to the bar, may register as active, inactive, retired, or disabled; however, only those registered as active may practice law in this state. Rule 208(a) (2001 Kan. Ct. R. Annot. 254). KRPC 5.5(a) (2001 Kan. Ct. R. Annot. 424) states: "A lawyer shall not . . . practice law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction."

Arnold clearly attempted to practice law both in state and federal court. He signed as attorney for plaintiffs, utilized his Supreme Court number, and sought to represent Grand Design Golf, Ltd., a Kansas corporation. Judge Sheppard's ruling was not appealed and raises a presumption of validity under Rule 202 (2001 Kan. Ct. R. Annot. 221).

It has been the longstanding rule in Kansas that a corporation may not appear in court by an agent who is not an attorney. *Atchison Homeless Shelters, Inc. v. Atchison County*, 24 Kan. App. 2d 454, 455, 946 P.2d 113, *rev. denied* 263 Kan. 885 (1997). Although we recently modified this rule with respect to matters under the Small Claims Procedure Act in *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 503, 14 P.3d 1149 (2000), we reiterated our approval of the *Atchison* rule in recognizing that a corporation is an artificial entity without right of self-representation, and further pointed out the administration of justice was efficiently furthered by requiring persons licensed to practice law and familiar with court procedures to represent corporations.

Arnold's reliance on *Benson v. City of De Soto*, 212 Kan. 415, is misplaced and does not justify his actions. In *Benson*, we refused

to dismiss an appeal filed by three of five city commissioners in a hotly contested land use case where the city attorney and private counsel hired by the city had refused to file the appeal. Shortly after the appeal was filed, the city obtained alternate counsel.

The *Benson* court held the trial court's dismissal of the appeal was "overly technical" and that K.S.A. 60-102 requires a liberal construction of the Code of Civil Procedure. 212 Kan. at 421-22. If Arnold truly believed *Benson* applied, it was his obligation to appeal Judge Sheppard's decision on that basis. We hold that our decision in *Benson* did not justify Arnold's actions.

Arnold's argument that his situation is somehow special and does not implicate Rule 208 is without merit. The hearing panel's findings and conclusions that Arnold engaged in the unauthorized practice of law was clearly and convincingly shown.

Arnold's contention that we lack jurisdiction to discipline him for conduct in federal court is not meritorious. In support of his argument, he relies on a portion of the comment to KRPC 8.5 (2001 Kan. Ct. R. Annot. 451), but a reading of the rule and the entire comment does not support his argument.

KRPC 8.5 states: "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere."

The Comment to the rule reads as follows:

"In modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States. In doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice. If their activity in another jurisdiction is substantial and continuous, it may constitute practice of law in that jurisdiction. See Rule 5.5.

"If the rules of professional conduct in the two jurisdictions differ, principles of conflict of laws may apply. Similar problems can arise when a lawyer is licensed to practice in more than one jurisdiction.

"Where the lawyer is licensed to practice law in two jurisdictions which impose conflicting obligations, applicable rules of choice of law may govern the situation. *A related problem arises with respect to practice before a federal tribunal, where the general authority of the states to regulate the practice of law must be reconciled with such authority as federal tribunals may have to regulate practice before them.*" (Emphasis added.)

It is the italicized portion of the Comment Arnold relies on in making his argument.

There is no conflict between state and federal jurisdiction. Arnold's actions were not proper in federal court just as they were not proper in state court. We retain the power to discipline attorneys for conduct committed outside of and beyond our Kansas courts. Arnold's reliance on the single sentence in the Comment to KRPC 8.5 is not persuasive.

Arnold next contends the Disciplinary Administrator is somehow precluded from going forward with the complaint because he first dismissed the complaint and then refiled it, basing the claimed violation on the Johnson County case and Judge Sheppard's rulings. This simply is not a defense to his actions.

Arnold argues his letter to Judge Sheppard was proper and fell into the category of protected free speech under the First Amendment. The two cases he cites, *In re Johnson*, 240 Kan. 334, 729 P.2d 1175 (1986), and *State v. Russell*, 227 Kan. 897, 610 P.2d 1122, *cert. denied* 449 U.S. 983 (1980), do not support his arguments. In *Johnson*, we found a respondent should be disciplined for making false unsupported criticisms and misleading statements about his opponent in a county attorney election campaign. In our discussion of the First Amendment in relation to attorney's speech we said:

"A lawyer, as a citizen, has a right to criticize a judge or other adjudicatory officer publicly. To exercise this right, the lawyer must be certain of the merit of the complaint, use appropriate language, and avoid petty criticisms. Unrestrained and intemperate statements against a judge or adjudicatory officer lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.

. . . .

". . . In those instances where a lawyer's unbridled speech amounts to misconduct which threatens a significant state interest, a state may restrict the lawyer's exercise of personal rights guaranteed by the Constitutions. *N.A.A.C.P. v. Button*, 371 U.S. 415, 438, 9 L. Ed. 2d 405, 83 S. Ct. 328, (1963).

. . . .

"Upon admission to the bar of this state, attorneys assume certain duties as officers of the court. Among the duties imposed upon attorneys is the duty to maintain the respect due to the courts of justice and to judicial officers. A lawyer is bound by the Code of Professional Responsibility in every capacity in which the

lawyer acts, whether he is acting as an attorney or not, and is subject to discipline even when involved in nonlegal matters, including campaigns for nonjudicial public office. *State v. Russell*, 227 Kan. 897, 610 P.2d 1122, *cert. denied* 449 U.S. 983 (1980). The imposition of the ethical obligation of honesty upon lawyers under DR 1-102(A)(4) is necessary for the administration of justice. See cases cited in *State v. Russell*, 227 Kan. at 900-901. Disciplinary action can be exercised not only for the purpose of enforcing legal rights but for the additional purpose of enforcing honorable conduct on the part of the court's own officers. *In re Estate of Williams*, 160 Kan. 220, 160 P.2d 260 (1945)." 240 Kan. 336-37.

In *Russell*, a respondent made false statements while running for a position on the Board of Public Utilities, and the comments were not deemed to amount to protected speech.

In this case, Arnold's behavior shows a complete lack of respect toward the judiciary. His style was sarcastic, insulting, and threatening and subjected him to the discipline that was entered. The remedy for a believed erroneous trial court ruling is appeal, not an intemperate writing faxed to the judge shortly after the ruling was made.

In reviewing recommended discipline, we recently stated:

"The hearing panel's recommendations of sanctions in a given case are 'advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator.' Rule 212(f) (2001 Kan. Ct. R. Annot. 265). In determining the appropriate discipline to be imposed for a violation of disciplinary rules, we consider the facts surrounding the violation as well as any aggravating or mitigating circumstances. *State v. Stakes*, 227 Kan. 711, 720, 608 P.2d 997 (1980)." *In re Berry*, 274 Kan. 336, 353-54, 50 P.3d 20 (2002).

The hearing panel properly looked to (a) the duty violated, (b) Arnold's mental state, (c) the actual or potential injury caused by Arnold's misconduct, and (d) the existence of aggravating or mitigating circumstances. We will not again set forth the reasoning of the hearing panel.

We have made an independent analysis of the facts in the record, which were found by clear and convincing evidence. We find the recommended discipline of published censure is appropriate considering all the evidence and testimony and the aggravating and mitigating circumstances set forth in the hearing panel report.

· We agree that Rule 208(f)(2) requires that if an attorney has been on inactive status for a period in excess of 5 years, he or she may be reinstated only upon full compliance with any conditions imposed by the Kansas Supreme Court. We decline to establish any specific conditions at this time, and if Arnold makes a written application to be reinstated to active status at some future date, the conditions and requirements should be determined at that time based on the then-existing facts.

Finally, Arnold's argument that our court is without jurisdiction because the notice of the hearing was received prior to the time he received the complaint fails to comply with Rule 211(c) (2001 Kan. Ct. R. Annot. 259). The Disciplinary Administrator admits Rule 211(c) was not strictly followed but contends there is no showing of prejudice and the technical deficiency in the timing of the notice cannot be a jurisdictional defense.

Kansas Supreme Court Rule 224(d) (2001 Kan. Ct. R. Annot. 296) states:

"Any deviation from the rules and procedures set forth herein shall not constitute a defense in a disciplinary proceeding or be grounds for dismissal of any complaint absent actual prejudice to the respondent. The respondent shall have the burden of showing any such prejudice by clear and convincing evidence."

When directly questioned at the disciplinary hearing, Arnold stated that he was not claiming any prejudice resulted from the notice he received. Neither does he allege any prejudice on appeal. Having failed to show or even allege any prejudice resulted from the timing of the notice, this argument fails and jurisdiction properly exists.

We therefore hold the findings of the hearing panel are supported by clear and convincing evidence, and the conclusions of law are adopted by the court. We further find that respondent should be disciplined by published censure.

IT IS THEREFORE ORDERED that Kris Lynn Arnold be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2001 Kan. Ct. R. Annot. 224) for his violations of the Kansas Rules of Professional Conduct.

It Is Further Ordered that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the respondent.

Larson, S.J., assigned.